## BAIN *vs.* THE ATHENS FOUNDRY AND MACHINE WORKS.

[Jackson, C. J., not presiding, on account of providential cause.]

1. In a suit by a widow for the homicide of her husband, resulting from certain blasting, which was being done for the purpose of enlarging the foundry building of the defendant, the court having charged that if the defendant was negligent, such negligence should amount to criminal negligence, before the plaintiff could recover, the charge fell short of giving the whole law to the jury, and was calculated to mislead them and to withdraw their minds from the main issue involved in this point.   He should have charged that, if the evidence showed that the blast followed the direction of the hole drilled, and if the hole was so drilled as to direct the blast against a house near by, in which there were a number of persons, among whom was the deceased, they

should take this into consideration in determining whether the defendant was guilty of criminal negligence.

2. Although two persons were employed by the same master, yet where one of them was employed as a blaster for the purpose of removing certain rocks on the master's property, and alone had charge of the work of blasting, and the other had nothing to do with it, but was employed as a wood-workman in the foundry of the master, they were not fellow-servants in the legal sense of the term, and a charge based on that assumption was erroneous, though it may have been a correct abstract statement.

3. There being no evidence to show that the deceased contributed in the slightest degree to the injury which caused his death, the charge of the court on the subject of contributory negligence was not founded on the evidence, and was erroneous.

4 The verdict in this case is not only contrary to the evidence, but is without evidence to support it. If the testimony in the case is entitled to credit, there should have been a verdict for the plaintiff.
October 20, 1885.

Negligence. Homicide. Husband and Wife. Words and Phrases. Master and Servant. Charge of Court. Verdict. Before Judge HUTCHINS. Clarke Superior Court. May Term, 1885.

Mary A. Bain brought suit against the Athens Foundry and Machine Works to recover for the homicide of her husband, laying her damages at $25,000.00. On the trial, the evidence for the plaintiff was, in brief, as follows :

On September 6, 1882, the husband of the plaintiff was employed as foreman in the wood department in the works of the defendant, and had been so employed for a number of years. The company was enlarging its buildings, and for that purpose it was necessary to blast away certain rocks in order to lay a foundation One Childers was employed to do the blasting. He was a drinking man, and people generally spoke of him as a reckless blaster. The plans for the foundation were drawn by an architect. Thomas Bailey was superintendent of the foundry, and had charge of the work of blasting. He gave directions to Childers, the blaster, and furnished him with logs or timbers to be put over the blast to prevent

injury from it, or, as a witness testified, he told Childers
to go into the lot and get such timbers as were there for
that purpose   The timbers used were chestnut posts or
logs.   To make a blast near a street or public place safe,
the best method is to place heavy logs or timbers over the
intended blast, and chain them down.   This blast was near
a public street.   Childers drilled a hole in the rock, point-
ing in the direction of the building where Bain was at
work, which was calculated to throw the broken pieces in
that direction.  The blast was set off, and a large rock,
the weight of which was estimated at from seventy-five to
eighty-six pounds, was thrown a distance variously esti-
mated at from seventy-five to one hundred and fifty feet,
breaking through a window and striking Bain, causing his
death.   The work-bench ran along the wall in front of the
window and on each side of it.   The wounds found upon
the deceased were on the left side and rear portion of his
head.   No one saw him at the moment of being struck, but
immediately after the rock came through the window, he
was seen to be lying on the floor.   The rock came through
the window at a height of about nine feet from the floor,
and struck a tool-chest fifteen or sixteen feet from the
window.   After the death of Bain, other and heavier
timbers were furnished to Childers, and he continued the
blasting under the direction of Bailey.   At the time of
the injury, the blast was unusually heavy.   On Bain's
work-bench was a part of a pattern and a piece of sand-
paper, with which he had been working just before the
blast.   One witness testified that once he saw Bain out
where the blasting was being done, but that Bain had
nothing to do with the blasting that he knew of it being
under the charge of Bailey.   To contradict certain testi-
mony given by Childers, the testimony of two or three
witnesses was introduced, to the effect that, sometime after
the injury, Childers had said in conversation that Bailey
had promised before this to furnish heavy weights for the
blasting; that the hole drilled pointed in the direction

where Bain was; that the weights used were not heavy enough to prevent the rocks from flying, and that that caused Bain's death ; that Bailey had told him to get some timbers, and he got all he saw. The deceased was fifty-five years of age, was in good health, and earned $100.00 per month. The tables of life expectancy were introduced.

The evidence for the defendant was, in brief, as follows : The plans for the new building, which was to be erected to increase the capacity of the shops, were drawn by W. W. Thomas, an architect. Bailey, on his direct examination, testified that he employed Childers " and turned it all over to Mr. Bain; he was foreman in the wood department; that Bain and the witness had laid off the foundation, and after it had been completed, Bain told the witness that it was a foot too short and would have to be extended that much further ; and it was in blasting this foot that the injury occurred; that Bain had charge of the plans and kept them; that he complained that the work was not progressing with sufficient rapidity, and wanted more force hired ; that the witness told Childers always to send a man on the street and the helpers through the shop to halloo when he loaded the blast, and to give another alarm when about to fire; and that such alarms were given; that the witness had told Childers to take a team and go into the lot and get such timbers as he could find; that there were chestnut posts, some sills and some chunks—did not recollect clearly. On cross-examination, Bailey testified that he had general supervision of the work, and spoke to Childers and Bain about it; that he regulated Childers; had a right to discontinue the work, put in new hands or make any change he saw fit; and that the company purchased the materials Childers used. Another witness testified that the foundation blasted out was a foot shorter than the plans called for, and that Bain said it must come out or be blasted out. Bailey stated that the same timber was furnished to Childers after Bain was killed, and that Childers continued work until the job was

v 75-46

finished; that Mr. Thomas was there once or twice a day; that Childers drank some, but he never knew him to drink while at work.  Thomas testified that he turned over the work to Bain; that he (witness) went there frequently, especially when Bain wanted to know something about changing the plans, or whether he had something right or not; and that Bain said the corner was not low enough, and he was going to have it blasted out.  Childers, the blaster, testified that he was working immediately under Bain's direction; that, Bain laid it off, was out there daily, and watched the witness to see if he got to the line; that Bain had been warned to keep his head out of the window, or a rock might go in there and hurt him; that Bain would invariably look out to see the execution of the blast; that he considered the precautions used sufficient to insure safety; that on the morning of the injury, the witness spoke to Bailey and thought he had gone far enough on the north end of the foundation; that Bain said he had not gone far enough by a foot; took out his tape-line, measured it, and stuck up a stick, and said it had to be blown out. On cross-examination, he stated that he did not recollect making certain contradictory statements about Bain's looking out of the window and how the accident occurred; that he got new timbers every day; that he knew when the hole was drilled that the blast would go in the direction in which it pointed.  Other witnesses testified that the two alarms were given as usual; one stated that Bain got off his bench, and when the witness last saw him, he was looking out of the window.   One alarm was always given when the blast was ready, and the second when the fuse was lit.  The wall on that side of the building was brick, and a man standing behind the wall would be protected from the blast.   One witness stated that just before the blast which caused his death, Bain was on the lower floor of the building; that the witness asked if there was any danger—wouldn't it be safer on the lower floor than up stairs? but Bain replied

that he did not consider there was any danger, and went up stairs to the room in which he ordinarily worked. Bain had been sick a short time before the accident, and was not making full time at his work, generally losing one, two or three days in a month. He was receiving $3.75 per day.

Other testimony was introduced, principally for the purpose of contradicting witnesses, to show the payment of burial expenses and certain money to the plaintiff, including the wages due her husband, and conversations which took place between her and the agent of the company.

The jury found for the defendant. The plaintiff moved for a new trial on the following grounds:

(1), (2.) Because the verdict is contrary to law and evidence.

(3.) Because the court charged as follows: "The statute of this state gives to a widow a right of action for damages against one who kills or causes the death of her husband, when such death is produced by acts of commission or omission, which make the killing amount to a homicide in the criminal sense of that word—that is, to either murder or manslaughter. Under this law, it is incumbent upon the plaintiff to show, not that defendant is chargeable with ordinary neglect, that it failed to exercise that degree of care and diligence which persons of ordinary diligence use, but she must go farther and satisfy the jury that death was caused by some intentional act or by the criminal negligence of the defendant. This is the sense in which 'negligence,' as applied to defendant's acts and conduct, is used in these instructions. Under the circumstances stated, the defendant would be chargeable with criminal negligence, but to justify you in so finding, the evidence should satisfy you that the killing was the result of such criminal negligence; otherwise the defendant would not be guilty of the homicide alleged, and therefore, not liable to the plaintiff in damages."

(4.) Because the court erred in charging the jury as follows: "It was the duty of the defendant not only to em-

ploy in the business of blasting a competent, skillful and careful servant, but to furnish him suitable materials and instrumentalities in performing the work. If it filled the measure of its duty in these respects, it would not be liable for the result."

(5.) Because the court erred in charging the jury as follows : " If the work of blasting, under the circumstances stated, was work of a dangerous character, so dangerous as to render it probable that the life of the deceased might be destroyed, and if, in the prosecution of it, the defendant failed to use proper care and diligence to avoid such a result, and the killing of deceased was the result of carelessness and neglect on defendant's part, then the defendant would be liable; and so, if the work of blasting was one of a dangerous character, and was prosecuted in a manner whereby the employé in the building was exposed to risks not known to him, and to dangers not apprehended by him, and which were the probable consequences of the blasting, and that the blasting was done in an incompetent, unskillful and careless manner, and in consequence of such carelessness and negligence, deceased was killed, the defendant would be liable for damages, unless the deceased, by his own want of care and diligence, contributed to his death."

The court overruled the motion, and the plaintiff excepted.

T. W. RUCKER; E. K. LUMPKIN; A. J. COBB, for plaintiff in error.

ALEX. S. ERWIN; POPE BARROW, for defendant.

BLANDFORD, Justice.

A verdict having gone in favor of defendant, the plaintiff moved the court for a new trial, which was refused.

The court charged the jury that, if the defendant was negligent, such negligence should amount to criminal neg-

Bain *vs.* The Athens Foundry and Machine Works.

ligence before the plaintiff could recover; but the charge fell far short of giving the whole law in charge to the jury. He should have stated that, if the evidence showed that the blast followed the direction of the hole drilled, and if the hole was so drilled as to direct the blast against a house near by, in which there were a number of individuals, among whom was the deceased, they should take this into consideration in determining whether the defendant was guilty of criminal negligence. The charge, as given on this point, was calculated to mislead the jury and to withdraw their minds from the main issue involved in this point.

Again, it is insisted that the whole of the charge as to deceased's being a fellow-servant with Childers, the blaster, is erroneous, because the same is mere abstract law. This assignment of error is well founded, under the evidence in the case, which is uncontradicted. Childers alone had charge of the work of blasting; with this work Bain had nothing to do; he was in no sense a fellow-servant with Childers. See Wood's Master and Servant, 840, 841. So we think that this part of the charge was mere abstract law, and should not have been given by the court.

Complaint is also made of the charge of the court as to contributory negligence on the part of the deceased. While the law on the subject was correctly stated by the court, there is no evidence in this record to show that Bain contributed in the slightest degree to the injury. He was at his place of business, the place where he should have been; he apprehended no danger to himself, but he was killed by the recklessness of the blaster in directing the blast against the place where he was.

The verdict in this case is not only contrary to the evidence, but without evidence to support it. If the testimony in the case is entitled to credit, there should have been a verdict for the plaintiff.

Judgment reversed.