## Louisville & Nashville Railroad Company v. Dougherty.

(Decided May 4, 1916.)

### Appeal from Barren Circuit Court.

1. Carriers—Passengers—United States Postal Clerk.—A United States postal clerk, when in a mail car in the discharge of his duties as such, is a passenger at all times when the railway company has actual or implied notice of his presence.

2. Carriers—Postal Clerks—Negligence.—Proof of notice, either actual or implied upon the part of the railway company, of the presence of postal clerks in a mail car upon a side track at a terminal is necessary to establish negligence of a duty due the postal clerk as a passenger.

3. Damages—Impairment of Earning Power—Negligence.—A recovery for impairment of future earning capacity should be limited

to such impairment as is reasonably certain to result from the negligent act complained of.

BENJAMIN D. WARFIELD, W. L. PORTER and SIMS & RODES for appellant.

BAIRD & RICHARDSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Appellee sued the appellant to recover damages alleged to have been sustained by him from illness resulting from appellant's failure to properly heat a railway mail car after its arrival in Nashville, Tennessee, from 2:35 a. m. until about 5:30 a. m. on January 24, 1914, during which time, as a United States postal clerk, he was assorting mail in said car.

The allegations of the petition are denied and contributory negligence pleaded by appellant. Upon a trial appellee was awarded $1,000.00 damages, to reverse which judgment appellant is appealing.

It is conceded by appellant that it was its duty to properly heat said car while it was *en route*, but that it was not its duty to furnish heat for the car after its arrival at its destination in Nashville, except upon notice, either express or implied, that it would be necessary for the postal employes to remain in said car thereafter.

Appellee admits that the car was properly heated until it arrived at Nashville, but contends that it was the absolute duty of appellant to furnish heat for the car so long as it was necessary for him to remain therein without necessity for any notice that the car would be so used.

The trial court adopting the contention of appellee refused to permit appellant to prove that ordinarily the postal clerks left the car upon this run immediately upon arrival in Nashville; that when it was going to be used longer it was the custom to notify appellant, and the court refused to submit to the jury the question of notice, but by the instructions charged appellant with the duty of furnishing heat so long as it was needed without regard to notice.

It has been uniformly held, in the absence of statutory provision to the contrary, that a mail clerk in the discharge of his duties as such, and in going to and returning from his work, while on the train is a passenger,

and that the railroad company owes him every consideration and duty that it owes a passenger. The authorities upon this question are annotated in 19 L. R. A. 340; 3 L. R. A. (N. S.) 218, and 26 L. R. A. (N. S.) 1058. Hence it was the duty of the railroad company to have furnished proper heat to make the postal car comfortable in which appellee was employed as a postal clerk so long as the car was so used with its knowledge, but undoubtedly this duty is limited to such times as the cars are being used for that purpose with the knowledge of the railroad company. It would be unreasonable to place upon the railroad company the duty to inspect each mail car upon arrival at a terminal to see whether or not it was going to be used thereafter, especially if such use upon a particular run was upon but rare occasions, and it was the custom upon the rare occasions when the employes were necessarily detained in the car after its arrival for the employes to give the company notice thereof. It would seem reasonable to permit the company under such circumstances to assume in the absence of notice that the car would not be used after its arrival at the terminal, and therefore unnecessary to provide heat for it.

The duty to furnish heat grows out of the duty to postal clerks as passengers, and they are passengers because the railroad company is carrying them for hire under contract with the United States. The relation having been established by contract implies consent of both parties, and consent of the railroad company can be asserted only with reference to such times and places as it has knowledge either express or implied of the presence of such clerks in the cars. It therefore results necessarily the relation cannot begin at a place or time, or continue until a time or place of which the company has no actual or implied knowledge. This proposition would seem elementary, but we are fortunate in finding two cases in which its truth is recognized in reference to mail clerks while in mail cars not *en route*.

In the case of Wabash R. Co. v. Jellison, 124 Ill. App. 652, a postal clerk while engaged in his duties in distributing mail in a mail car after its arrival at a terminal, and after it had been placed upon a switch track, was injured by the collision of another car with the mail car. The question at issue was whether under the circumstances the mail clerk was to be regarded as

a passenger in order to determine what duties the railroad company owed him, and the court stated its reasons for the conclusion that he was in that instance to be considered a passenger, as follows:

"Under a custom of years known as we think the evidence shows, to all the agents of the defendant company who had charge of the arrangement of the defendant's railroad yards and of the course of the tranship-ment of the mails at Decatur from one train to another at defendant's station, the plaintiff and his co-employes in the U. S. mail service between Decatur and Quincy had arrived in Decatur in mail car 230 at 11:15 each evening, had occupied the car all night in the yards of the company, had received mail in it brought by bag-gagemen of the defendant between eleven and twelve o'clock, had been in charge of that mail during the night in the car, had received more mail between three and four in the morning, and had been at work in the lighted car from 3:30 on to the time of their departure in it at 4:45 on the return trip. In view of the participation of the defendant's agents in this routine connected with car No. 230 for years, we should find it difficult to believe that the yard conductor had not good reason to know or believe that at 4 o'clock a. m. on the night in question, and on every other, there were persons in the car who were there in the discharge of their duties preparatory to a run on the road between Decatur and Quincy, who were there by arrangement and agreement, express or implied, between the railroad company and them, or between the railroad company and their employers (which would be the same thing), and who were entitled by virtue of such arrangement or agreement (to say nothing of the statutes of the United States, which he was presumed to know), to transportation as passengers when the train began its journey. The yard master testifies, it is true, that he did not know whether anybody slept in the car. He certainly could not have supposed that bags of letter mail were put into an empty car, and the doors left open, without lights, and the car then carried around the yard wherever it happened to be convenient to put it, as "dead equipment" in charge of nobody. It did not need knowledge on his part of the undisputed fact that for at least six years this never had occurred, to render it improbable to him that it was occurring or would occur.

"Under these circumstances we think the plaintiff was a passenger in the car at all times throughout the night —certainly at the time of the accident in the morning."

It will be seen that the postal clerk in that case was held to be a passenger during the night while the mail car was on a side track at the terminal, because of the existence of a custom of many years' standing that charged the railroad company with knowledge of the fact that the car was at the time and place being used by mail clerks in the discharge of their duties as such.

The other case is Farley v. C. H. & D. R. Co., 108 Fed. Rep. 14, in which the circuit court of appeals for the sixth circuit says:

"The relation of carrier and passenger, which will bring a carrier under the obligation to exercise the high degree of care and caution for the safety of a person imposed by such relation, can only be created by contract, express or implied."

And a peremptory instruction, given upon the trial of the case in the district court, is approved upon the ground that the defendant railroad company could not be charged with knowledge of the postal clerk's presence in the mail car at the time and place of the accident complained of, although he shows by the proof that it had been the custom of himself and other railway mail clerks upon that particular run to board the car under circumstances similar to those under which he had boarded the car on this occasion, and the reason this custom of four years standing was held insufficient to charge the company with knowledge of his presence upon the car was because the proof of the custom was not sufficient to show knowledge, either express or implied, of the custom upon the part of the railroad company.

It will be seen that in the first, Jellison case, a postal clerk was held to have been a passenger at the time of the accident, because, by reason of the custom of which the company knew, it was chargeable with the knowledge of his presence in the car in the discharge of his duties as a railway mail clerk at the time of the accident.

In the latter, the Farley case, the liability of the railroad company was denied because, at the time of the accident, the proof was insufficient to charge it with knowledge of the presence in the car of the railway mail clerk, from which it is quite clear that we may deduce

from these two cases, in which the courts reached exactly opposite conclusions upon the proof, the principle of law recognized by and underlying both opinions, that a railroad company owes to a railway mail clerk the same duty that it owes to a passenger at all times and under all circumstances when it knows actually or impliedly of his presence in the mail car in the discharge of his duties, which will be determined from the circumstances of each case. See also International & G. N. R. Co. v. Davis, 17 Tex. Civ. App. 340, 43 S. W. 540.

If this is a correct statement of the duty that a railroad company owes to a mail clerk, and we feel confident that it is, then upon the case at bar appellant owed to appellee the duty due to passengers at the time of the accident, only if it was chargeable under the circumstances of the particular case with such notice at that time.

It was, therefore, error upon the part of the trial court to refuse to allow appellant to prove that it was the custom for the postal employes usually to leave the car upon this run immediately upon its arrival in Nashville, and that upon such occasions as it became necessary for the clerks to remain in the car thereafter it was customary to notify appellant of said necessity. This error resulted from the assumption upon the part of the trial court that it was appellant's absolute duty to furnish heat upon all occasions, and the instructions were framed upon the same view of the law, and they were, therefore, erroneous and prejudicial to the appellant.

2. Our conclusion upon this proposition necessitates the reversal of the judgment and another trial of the cause, and renders unnecessary a discussion of the other errors alleged except such as are liable to occur again upon the next trial.

The instruction on the measure of damages was objectionable because of the fact that it permitted a recovery for future impairment of appellee's earning capacity without the proper qualification that it must be such as the jury may believe from the evidence to be reasonably certain to result from the negligence of appellant. It is exceedingly doubtful if, upon the evidence here, any recovery should have been permitted for future impairment of appellee's earning capacity, but if upon another trial the evidence justifies instruct-

ing upon that item of damage the instruction should be qualified as above indicated. L. & N. R. R. Co. v. Logsdon, 114 Ky. 746.

For the reasons stated the judgment is reversed and the cause remanded for a new trial consistent herewith.