BALTIMORE & OHIO R. CO. *v.* CHARLES W. DAVIS.

*Injury to Railway Postal Clerk—Negligence of Carrier—Car
With Defective Door—Contributory Negligence.*

A railway postal clerk, whose duty it is to ride in a mail car,
is entitled to the same care from the carrier as a paid passenger,
consistent with the proper performance of his duty, even though
he is merely superintending the loading of the car while it is
standing in the station.                              pp. 433-435

A railway company was negligent if it furnished a mail car
having a defective door, by reason of which a postal clerk was
injured, especially when it had been notified of the defect.

p. 436

A railway company was not as a matter of law free from
liability for an injury to a postal clerk, caused by defects in a
mail car door which he attempted to close while the car was
being loaded by railway porters under his direction, even though
in attempting to close it he transcended his duties, he having
an interest in the closing of the door both at that time and while
*en route,* it being necessary to close it promptly, there being no
employee of the company nearby, so far as he knew, whose duty
it was to fix a defective door, and the foreman of the porters
accepting his assistance in the attempt to close the door.

pp. 436, 437

Contributory negligence, like primary negligence, is relative
and not absolute, and, depending on the particular circum-
stances, it is to be determined, not in an abstract way, but rela-
tively, as it may be connected with, and dependent upon, the
duty and obligation of the defendant.                pp. 437, 438

A railway company having furnished a mail car, to be taken
out that afternoon, which had a defective door, whether a postal
clerk, who was injured while trying to close the door, was guilty
of contributory negligence in so doing in spite of his knowledge
that on the previous day another clerk had been unable to close
it, was a question for the jury.                          p. 438

*Decided March 3rd, 1927.*

Appeal from the Circuit Court for Prince George's County (LOKER and MATTINGLY, JJ.).

Action by Charles W. Davis against the Baltimore and Ohio Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*John S. Stanley* and *William Stanley,* with whom were *Stanley & Stanley* on the brief, for the appellant.

*John P. Bramhall* and *LeRoy Pumphrey,* with whom were *Bramhall & McCabe* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Charles W. Davis, the plaintiff, a railway postal clerk employed by the United States Government, was injured on December 18th, 1924, while assisting in closing a defective door of a railway mail car, No. 737, belonging to the defendant, the Baltimore and Ohio Railroad Company. He was substituting for another postal clerk, named Carrico, who, while working on this car the night before, had taken cold because he could not close one of the doors of the car. Plaintiff testified that he was in sole charge of the car and had a run out of Washington on the afternoon of December 18th; that the car was operated over the tracks of the defendant and bore the name " 'Baltimore & Ohio,' that the mail that was to be placed in the postal car in question included all ordinary parcel post and paper mail, either in bags or parcels that were too large to put in bags, both of which are stored in the car; * * * that in loading the storage car at the terminal point, such as Washington, the car is supposed to be loaded as nearly solid as practicable, with all doorways closed except such doorways as are needed to load and unload mail *en route* along the line; that there were three doors on each side of the car and a door at the end; that the mail was loaded in the end door on one side of the car, the

middle doors on both sides of the car were supposed to be closed and mail loaded solid against them; but that the sliding doors in the side were double doors both ways; that, in order that the side doors may slide when the car is loaded, there must be something to keep the doors from going back against anything that may be in the car and interfere with its operation; that to prevent this there is a niche made and a false wall put on which allows the door to slide into this pocket, so that mail and boxes can be piled up against the pocket and the door will still slide back without any interference; that the doors slide both ways, one door one way and one the other; that these sliding doors have a little knob on the inside that protrudes about five-eighths of an inch; that it is "sufficient plenty" to catch under the keeper that holds the door from slamming open in case the car was hit; that this door with the knob on it, when the car is in proper condition, slides back behind the false wall without in any way touching the wall. "There is a loose catch back in this wall that has a bevel on the side of it that when this knob comes back it slides that bevel, which raises the ridge until it gets back to the notch, which is straight down, and then the catch drops down over this knob which holds the door closed; and if anything may strike the car, the door is bound to stay where it is. That is the object of this catch on the door, so that it would not slam shut and injure any one who might be in the door." That witness had never worked on this car before, as it was only used for emergency purposes for a storage car for Christmas mail; that the false wall was steel, the same material as the rest of the car; that witness had been in the car five minutes before the accident occurred and was supervising the loading of the car; that he told the porters to close the end door; that he was probably three minutes going around chalking the car designating places where mail for different places was to be put; and during that time the porters had been trying to close this door; that he told them to leave this door open and close the other door, and they went to the side door to close it, and this was the door at which witness was hurt. "The porter takes hold of

the door. I had informed him that I had been informed that this door would not close the night before. On this account he used special effort on this account to open the door. He grabbed it, and of course used all the strength that he had, and pulled the door, which would be really closed, pulling out from in the false wall; and he pulled it so hard that it pulled by a stick that was in the centre of this double door, which is supposed to stop this door when it gets there; but this stop evidently is faulty, because the door pulls clear past the stop, and leaves a place of about probably eight inches over against the other door. * * * He takes hold of the door and starts to pull it back. It is stuck so tight that he does not succeed in moving. I put my hand against the wall and put my other hand against the door to assist him in pushing it back * * * against the false well * * *. Another porter is standing here. He also pushed on that door, and pushed it against this door, which shoves it against my finger. * * * The knob of this door caught my finger where it struck exactly on the face of this false wall. The knob that should have gone entirely behind the wall strikes the false wall, * * * because this false wall is caved in. * * * It was caved in when I noticed it. Of course I did not notice it when I put my hand against it, or I would not have put my hand there. It was caved in gradually." Witness had been in the car about five minutes when the accident occurred. "We had been at this door probably half a minute; not more than that; no time for any examination." Witness further testified that if this false wall had been true and straight it could not possibly have touched his finger.

On cross-examination he said the work of bringing in the mail was done by the porters who work at the Union Terminal, and witness designated the points at which it was to be piled; there were probably half a dozen colored porters; Mr. Callahan came in just about the time the accident happened; Callahan was foreman at Union Station: "I know he is the man in charge, looking after the things necessary to be done about cars, looking after fixing the water coolers, and anything that has to be done about the car, he is usually

on the job." That if Callahan was there before, witness has no recollection of it. Witness was asked about a statement he had signed for a claim agent, in which it appears that Callahan was present and that witness had sent for Callahan to see about the door; that "no one asked me to assist in getting the door back, that is pushing it back, but I just volunteered to assist, as I had sent for Car Foreman Callahan to look at the door owing to it being defective." There was at the foot of the statement, written by plaintiff, "I have read above and find it O. K." The witness said he made a statement to the agent, but did not read what he had written. "Mr. Steel was there, and with the pain that I had, and everything else connected with it, I was very much worried and would have been awfully glad to get rid of him. I signed it to get rid of him. * * * I cannot state that I sent for Car Foreman Callahan. After we had worked at this end door, as I stated before, which we could not close, I said to the boys, 'We will have to have some one close this door —not the door we were at later. That was the door between the two cars. And one of the boys probably went after Mr. Callahan, which would be a most natural thing. I did not say, 'Mr. Callahan'; I said, 'Some one to close the door.'" "Q. Did you look when you put your hand there? A. No. Q. You put your hand there without looking? A. Yes, because I knew the condition of those cars. I knew where it is safe to put your hand and where it is not safe to put your hand."

L. A. Carrico testified that he came early on Car No. 737 on December 17th, and told some railroad man, in the station when he came in, of the condition the doors were in; that witness told plaintiff that the car was in bad shape, that the door could not be closed; witness did not know what was wrong or what was the cause of it, but he could not close it. Arthur L. Van Horn, superintendent of the railway mail service, testified that the Baltimore and Ohio Railroad Company, on December 18th, supplied to the railway

mail service, for the use of transporting storage mail, car No. 737 of their line.

So far as the record shows, Howard W. Marshall was the only witness offered by defendant. He testified that he was assistant baggage agent of the Washington Terminal Company, with offices in Union Station at Washington; that if a defective door of a baggage car is reported to him or to any one in his department it is the duty of the car department to fix the door; that Mr. Callahan is the foreman of the car department; that there is no duty on the postal clerk to fix the doors; that witness does not know how often the cars are inspected.

Plaintiff offered three prayers, the first and third of which were granted. The first instructed the jury that the care required of defendant in protecting plaintiff while engaged in his duties as postal clerk in its mail car was that due to a passenger on its trains, so far as compatible with the performance of his duties as postal clerk, and that this includes the obligation to furnish mail cars with suitable doors and to keep them in repair and condition that they could be safely opened and shut with reasonable facility, and in this respect it was required to exercise the highest degree of care.

The third prayer was a measure of damages prayer and seems to be unobjectionable, if the case was to go to the jury.

The defendant offered twelve, of which the seventh, eighth, ninth, tenth and eleventh were granted. The first five asked for a directed verdict on the grounds of: (1) Lack of evidence generally; (2) lack of evidence that the door or doors complained of were, at the time of the accident, operated or controlled by the defendant; (3) contributory negligence; (4) lack of evidence that defendant failed in the performance of any duty it may have owed plaintiff as alleged in the declaration; (5) lack of evidence under the pleadings— variance prayer.

The sixth asked for an instruction that there was no evidence to show the responsibility of the defendant for the alleged negligent act of the employee of the Washington

Terminal Company in the operation of the door or doors of the car complained of, and that if the jury found the said negligent operation of said door or doors to be the sole cause of the injury complained of, their verdict should be for defendant.

The twelfth presented the proposition that, if the accident complained of was caused by the action of the plaintiff in attempting to open or close the door or doors of the car, and if there were present in said car men whose duty it was to open or close said door or doors, and if it was not incumbent upon plaintiff to assist in the opening or closing of said door or doors, the verdict should be for the defendant.

The only bill of exception in this case relates to the ruling on the prayers. The real contention of defendant is that the case should have been taken from the jury either on the ground of lack of evidence of negligence on the part of the defendant, or because of contributory negligence on the part of the plaintiff. And the reasons for these contentions, as stated by defendant in its brief, are: (1) That at the time of the injury plaintiff was undertaking wrongfully to transcend the duties of his position; (2) that this wrongful act of plaintiff and not the alleged defective condition of the door was the proximate cause of the injury; (3) that even if the door was defective and even if the act of opening or closing this door had been required of plaintiff as a part of his duty, he would still be barred from recovery by contributory negligence.

Before dealing with these propositions specifically it will be well to determine plaintiff's status.

It is conceded by appellant that, during transportation, or where the element of transportation is involved, a postal clerk is entitled to the same care as a paid passenger, consistent with the proper performance of his duty. But appellant contends that inasmuch as appellee was at the time of the accident merely superintending the loading of the car while it was standing in the station, while he was so engaged he did not have the status of a passenger. This position, we

think, is untenable. In 4 *R. C. L.* p. 1012, sec. 477, it is said:

"As a general rule, where a carrier receives and agrees to transport a person not in its employment, whether by a contract with the one to be carried or with another who employs such person to transact the employer's business upon the cars or other conveyances of the carrier, the person so carried sustains the relation of a passenger to the extent that if injured through the negligence of the carriers or its servants, without his fault, his right to recover damages rests upon the same basis as that of an ordinary passenger for hire * * *. It is enough that he is lawfully on the car and entitled to transportation to give him the character of passenger and to entitle him to recover for an injury resulting from the negligence of the carrier or its servants, if this occurs without fault on his part." It is further said that this rule is supported by the great weight of authority. See also 10 *C. J.* sec. 1053, p. 631; *Balto. & O. R. Co. v. State, use of Wiley,* 72 Md. 36.

The status of appellant at the time of the injury was certainly at least as closely connected with the matter of transportation as is that of an ordinary passenger on the railroad's premises, intending to take a train and for that purpose approaching the station or waiting there, and such an one has always been held in this state to be a passenger. *Balto. & O. R. Co. v. State, use of Hauer,* 60 Md. 449; *Balto. & O. R. Co. v. State, use of Mohone,* 63 Md. 135; *Phila., B. & W. R. Co. v. Green,* 110 Md. 32; *Phila., B. & W. R. Co. v. Crawford,* 112 Md. 508; *Pennsylvania R. Co. v. Hoover,* 142 Md. 251.

The case of *Price v. Pennsylvania R. Co.,* 113 U. S. 218, cited by appellant, arose under a statute of Pennsylvania which provided that, in an action by a postal clerk or other person travelling as the employee of another, such person's rights shall be only such as they would have been if he had been an employee of the railroad company. The supreme court held no federal question was involved. In *Pittsburgh*

*C. C. & St. L. Ry. Co. v. Arnott,* 80 Ind. App. 40, the mail clerk caught cold while riding in a baggage car where he had no right to be. In *Lusk v. Wilkes,* 70 Okla. 44, the facts were entirely different from those in the case at bar. In *Ward v. New York Cent. R. Co.,* 248 Mass. 115, and in *Kelly v. N. Y. Cent. R. Co.,* 255 Mass. 124, where mail clerks were held to be invitees and not passengers while loading mail cars, it was not a part of the duties of the mail clerks to ride in cars after they were loaded, as it was in the case at bar.

Now taking up appellant's contentions, we will consider 1 and 2 together.

Car No. 737 was furnished the United States Government under sections 7480A and 7482A, United States Compiled Statutes of 1916 (Act of Congress, July 28, 1916). In sub-sections 11, 13, 14 and 12, of section 7482A, and in section 7480A, and in sub-section 6 of section 7482A, are found the following provisions:

> "All cars or parts of cars used by the Railway Mail Service shall be of such construction, style, length and character, and furnished in such manner as shall be required by the Postmaster-General, and shall be constructed, fitted up, maintained, heated, lighted and cleaned by and at the expense of the railroad companies. * * *

> "Railroad companies carrying the mails shall furnish all necessary facilities for carrying and handling them while in their custody. They shall furnish all cars or parts of cars used in the transportation and distribution of the mails, except as herein or otherwise provided, and place them in stations before the departure of trains at such times and when required to do so. * * *

> "If any railroad company carrying the mails shall fail or refuse * * * to construct, fit up, maintain, heat, light and clean such cars * * * as may be required by the Postmaster-General, it shall be fined such reasonable sum as may, in the discretion of the Postmaster-General, be deemed proper.

"Service over property owned or controlled by an-
other company or a terminal company shall be con-
sidered service of the railroad company using such
property and not that of the other or terminal com-
pany.

"Hereafter every railroad company carrying the
mails shall carry on any train it operates and without
extra charge therefor the persons in charge of the mails
and when on duty and traveling to and from duty, and
all duly accredited agents and officers of the Post
Office Department and the Railway Mail Service. * * *

"Service by full and apartment railway post-office
cars and storage cars shall include the carriage therein
of all mail matter, equipment and supplies for the
mail service and the employees of the Postal Service
or Post Office Department as shall be directed by the
Postmaster-General to be so carried." * * *

Having furnished a defective car, or one defectively
equipped as to doors, appellant was unquestionably negli-
gent, especially when appellant had been notified of the
condition of the car. Assuming for the moment, without so
holding, that appellee was transcending the duties of his
position in assisting porters to close a door which had gotten
out of order, of which fact he had been informed, did that
relieve appellant of the consequences of its negligence, apart
from the question of contributory negligence? We think
not, under the circumstances of this case, certainly not as a
matter of law. The burden was on the defendant to prove
any fault of plaintiff which might have such effect. Here
we have a defective car furnished with the knowledge of
appellant, and appellee required to do certain work therein
which presumably required promptness, and for which the
shutting of the door was necessary. There is no evidence
in the case that there was sufficient time to have permitted
of the delay involved in waiting for the car foreman to come
to fix the door, and there is evidence that appellee did not
know he had arrived until after the accident. There is no
evidence in the case that it was the duty of the porters to

open and shut doors. Their duty, as it appears in the record, was to bring in and place the mail packages under the direction of appellee. It is difficult to regard the natural action of appellee in lending his aid to men working under his direction in endeavoring to shut a door which had to be shut to enable him to perform his duties, as transcending his duties; and even if he was not required to give this assistance, it was only what any strong man under the circumstances would have done almost instinctively. The foreman of porters was there and tacitly accepted the assistance without objection, if he did not request it. In 39 *C. J.,* page 270, sec. 391, it is said that where "the servant of one master has an interest in the work in any proper capacity, and at the request or with the consent of another's servant undertakes to assist in the work, he does not do so at his own risk, and if he is injured by their carelessness, their master is responsible."

Appellee certainly had an interest in the work. He was interested because it was necessary for the work which he had to perform, and also because it was important for him to know that he could handle this door *en route. General Rwy. Signal Co. v. Valois,* 25 Ohio Cir. Ct., N. S. 423; *McIntire Street Ry. Co. v. Bolton,* 43 Ohio St. 224.

In *Lancaster v. Hall* (Texas), 277 S. W. 776, cited by appellant, the court called attention to the fact that plaintiff was not injured while using the defective appliance for the purpose for which it was designed, but received the injury while making an unauthorized attempt to repair the defect.

In the case at bar appellee was simply trying to use the defective appliance for the purpose for which it was designed and was not trying to repair it; so there was an unbroken connection between the wrongful act of defendant and the injury. *State v. Wash., B. & A. Elec. R. Co.,* 130 Md. 612.

Contributory negligence, like primary negligence, is relative and not absolute, and being relative it is dependent on the peculiar circumstances of each particular case. *McNab*

*v. United Rwys. Co.,* 94 Md. 724. And, in considering the facts, the question of ordinary care on the part of the party injured is not to be determined in an abstract way, but relatively as it may be connected with, and dependent upon, the duty and obligation of the defendant. *Balto. & O. R. Co. v. State, use of Hauer, supra.* Although appellee knew that Carrico had not been able to close the door, there is nothing to show that he knew it would be dangerous for him to try to shut it. Indeed, the conduct of appellant in delivering the car to him to be taken out that afternoon was some justification for his trying to make it immediately available for the purpose for which it was furnished, and, though he was required to exercise reasonable care, the implied assurance of fitness for use naturally lessened the care with which he went about using it, and lulled him into neglect to make such an examination of the door as would have revealed the danger of placing his hand where he did. In cases of this character, the question of contributory negligence is one for the jury to determine. 20 *R. C. L.* p. 97; *Williams v. Sleepy Hollow Co.,* 37 Col. 62; *Dunning v. New York Central R. Co.,* 255 Mass. 211; *Balto. & O. R. Co. v. State, use of Hauer, supra; Phila., W. & B. R. Co. v. Anderson,* 72 Md. 519. There was no such prominent and decisive act, in regard to the effect and character of which no room was left for ordinary minds to differ, as would have justified the court in withdrawing the question of contributory negligence from the jury. That question was properly submitted by appellant's eighth prayer. *Balto. & O. R. Co., v. Owings,* 65 Md. 513; *Winkelman & Brown v. Colladay,* 88 Md. 78; *Central Ry. Co. v. Coleman,* 80 Md. 337.

In the case of *Kelley v. New York Central R. Co., supra,* relied on by appellant, the complaint was of the smoothness of the threshold of the car on which plaintiff slipped in leaving the car. No defect was shown in it and it was not even shown to have been of an unusual kind. In that case it was held defendant was not guilty of negligence. As hereinbefore noted, it was not the duty of the plaintiff to ride in the car. He was held to be an invitee only. In *Brehm v. Atchison,*

*T. & S. F. R. Co.,* 111 Kan. 242, plaintiff had actually seen the door swinging for sixty-five miles, and notwithstanding this put her hand in the door jam in leaving the car.

The provision of the Act of Congress above quoted disposes of appellant's contention that it was not shown to be responsible for the condition of the car.

It follows from what we have said that we find no error in the ruling of the trial court on the prayers.

*Judgment affirmed, with costs to appellee.*

BOND, C. J., OFFUTT and PARKE, JJ., dissent.