**STANDARD ACCIDENT INSURANCE CO.
v. TERRELL et al.**

No. 12782.

United States Court of Appeals
Fifth Circuit.

Feb. 18, 1950.

Rehearing Denied March 18, 1950.

Geo. A. Weller, Beaumont, Tex., for appellant

2

Alto V. Watson, Beaumont, Tex., for appellee.

Before WALLER, BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This was an action brought in the 58th Judicial District Court of Jefferson County, Texas, by appellees, the widow and surviving minor children of Clyde N. Terrell, deceased, for death benefits under the Workmen's Compensation Act of Texas, Vernon's Ann.Civ.St. art. 8306 et seq. Upon motion of the defendant, a Michigan corporation, the cause was removed because of diversity of citizenship to the United States District Court for the Eastern District of Texas. There was a trial before a jury and a verdict for appellees. To reverse the judgment, appellant appeals. The parties will be referred to as they were designated below.

These facts were shown: On Friday, September 5, 1947, Clyde N. Terrell, a large man weighing 227 pounds and six feet one inch in height was in the employ of Carruth Contracting Company. On that day he and a fellow workman, Raymond Morris, were engaged in setting up a pile-driving rig and were laying timber across the rig with the aid of a dragline. In the course of these operations and while laying in place a large timber Terrell stepped on one end which extended outside the rig to balance it and when he did the timber turned and he lost his balance but in falling he caught an iron rail on the side of the timber and pulled himself back up on the rig. Morris testified that he did not see Terrell fall but saw only his hands clutching the rail and he did not believe that Terrell had any trouble pulling himself back up, though he could not tell if Terrell was in any great strain. Work was resumed and after the timber was laid in place Terrell climbed down from the rig, walked to where the foreman was standing and reported the fact that he had fallen and injured his leg, whereupon the foreman sent him to a doctor for treatment. It was admitted that the injury to the leg had nothing to do with Terrell's subsequent death. He received no other bodily blows.

On the following day which was Saturday, a non-work day, Terrell walked to town, returned home and went to bed. On Sunday, as was his custom, he rested at home. On Monday he was back on the job and performed his regular work. Upon returning home from work at the regular time, he was pale and hot and his lips were blue. He performed his regular work on Tuesday and Wednesday but the foreman on the job noticed that on these days Terrell had slowed down quite a bit in his work. Morris, his co-worker, did not see any difference in Terrell's work, and he testified that Terrell appeared to be in good health and made no complaints. Upon returning home on Wednesday Terrell ate a good meal and shortly thereafter became ill while shaving and vomited a large amount of blood. That evening he was taken to the hospital where he was attended by Doctor Weiss. On Thursday evening the patient had his first stool and passed a large amount of bright and dark red blood and that same evening he again had a hemorrhage of blood orally and he continued to hemorrhage and to vomit blood until he died on Friday morning, one week following the date of his injury.

An autopsy disclosed the cause of death to be rupture of the esophageal varices with sclerosis of the liver as a secondary cause. The site of the rupture was so small it could not be definitely located, but several pin point mucosal ulcerations were seen in the area where the esophagus joins the stomach.

Sclerosis of the liver is a condition wherein the normal liver walls are replaced by fibrous tissue. In explaining this condition Dr. Ferguson, a witness for plaintiff, testified substantially to the effect that when the liver becomes cirrhotic and scar tissue forms it blocks off the veins that feed into the liver. When this occurs it is necessary for nature to establish a collateral circulation that can run around the liver and still deliver all the blood to the heart and lungs that should normally flow through the liver. This is done by the blood being forced back into a coronary vein, which in turn forces the blood into the veins in the lower part of the esophagus. These esophageal veins

have no valves like other veins to keep the blood from coming back into the esophagus. As a result there is a back pressure from the veins that feed into the liver which causes a marked dilation and thinning of the walls of these vessels. When a condition such as has been described exists, a rupture of the esophageal varices is liable to occur at any time and place though strenuous exercise or lifting or straining, or even the consumption of coarse food would make them more susceptible to rupture.

A hypothetical question was propounded to Dr. Ferguson, upon the basis of which the witness was asked for his opinion as to whether or not "the strain in which he (Terrell) got himself in pulling himself back upon the timber was a producing cause of the ulcerated esophageal varices." The question was rather lengthy. It was necessarily long because plaintiffs attempted to incorporate therein all of the facts developed in their testimony as well as the facts reflected in the autopsy. To that question the defendant objected on the ground, among others, that the statements of the hypothesis contained a part of the hearsay testimony of Mrs. Terrell, which was improperly received in evidence over defendant's objection, namely that the deceased had complained to her that week end of dark blood in his stool. The objection was overruled and the witness was permitted to answer. His answer to the above question was: "That a man weighing 227 pounds falls a distance of six feet or his body length and he checks his fall suddenly by grabbing some projecting piece of iron or timber, that with the diseased condition that was found in the autopsy that it is probable and I think he did rupture these dilated vessels in the lower part of his esophagus at that time, or that the walls were thinned to such an extent that later hemorrhage and rupture came about." His theory about this matter was that the esophagus veins were ruptured at the time of the accident; that the tear in the vein was very small and with the continued work the opening got larger until the time came

when he had lost such an enormous quantity of blood that he was forced into the hospital. And his conclusion, which was dependent upon history, was to a large extent based upon the fact that the deceased saw blood in his stool "the same day or the following day." The opinion of plaintiffs' expert was directly in conflict with defendant's medical testimony. The medical experts testifying for the defendant gave it as their opinion that the rupture of the esophageal varices was from natural causes and that the fall had nothing to do with the rupture.

The decision in this case thus turns on the admissibility of Dr. Ferguson's testimony. The principal question is whether the statement of Mrs. Terrell was hearsay and if hearsay, whether its admission and incorporation into the hypothetical question asked Dr. Ferguson was so prejudicial as to demand reversal.

The statement of the deceased to his wife on Saturday or Sunday that he had seen dark red blood in his stool was inadmissible and should have been excluded as hearsay. Likewise the opinion of the plaintiffs' medical expert based in part on that hearsay was inadmissible.[1]

The plaintiffs seek to avoid application of the hearsay rule by asserting that it was properly admitted as a declaration of a relevant bodily condition. In the alternative, the plaintiffs urge that no reversible error was committed because if there was error in the original admission of the testimony it was waived by the defendant in having cross-examined Mrs. Terrell on the point for the purpose of developing other than the truth or falsity of the matter to which she testified on direct examination. The testimony of Mrs. Terrell was: "He told me that he had seen blood in his stool, a dark, red blood in his stool, and that occurred on Saturday or Sunday." The record does not disclose whether the statement was made spontaneously and coincident with the occurrance of any presently existing pain or suffering, nor does it give the slightest indication as to when the statement was made in point of time with reference to the occurrence described.

1. Texas Employers' Ins. Ass'n. v. Boyd, Tex.Civ.App., 199 S.W.2d 257, 259.

 The rule of evidence in Texas governing the introduction of statements of this character, as stated in Gulf, C. & S. F. R. Co. v. Young, Tex.Civ.App., 284 S.W. 664, 670, is:

" 'The exclamation or complaints which are the spontaneous manifestations of distress or pain or suffering are admissible as original evidence under the ordinary application of the rule of res gestae.' There exists, however, a well-defined distinction between one describing his ailments to a witness and a declaration showing then-existing pain and suffering. As to the admission of descriptive statements in evidence, the following rule controls:

" 'But the mere descriptive statements of a sick or injured person can be admitted in evidence only when made (1) to a medical attendant or nurse for purposes of medical treatment, or (2) they must relate to existing pain or other symptoms from which the person is then suffering, and (3) such statements or explanatory symptoms are admissible when the medical attendant or nurse is called upon to give a conclusion based in part upon them, and is explanatory to the conclusion of such medical attendant or nurse'."

The statement in question was not made to a physician for purposes of treatment and it did not relate to existing pain or other symptoms from which the person was then suffering; it was but an expression of a past, rather than of a then existing symptom, and therefore was not admissible as part of the *res gestae*. The case of Texas & Pac. R. Co. v. Barron, 78 Tex. 421, 14 S.W. 698, upon which plaintiff relies, is not apposite. In that case the party injured was clearly speaking of a then existing pain.

As to the plaintiffs' alternative contention, the Supreme Court of Texas has held that a litigant does not waive a valid objection by cross-examination of the witness. [2]

Where as here error is shown, the rule is well established that there should be reversal unless it *affirmatively* appears from the whole record that it was not prejudicial.[3] It is not easy to determine the weight which was given to Dr. Ferguson's testimony by the jury. The jury, for aught we can know, may have been largely controlled thereby. Therefore, we cannot say from a review of the whole record that lack of prejudice affirmatively appears.

The judgment of the District Court is reversed and the cause is remanded for a new trial.

2. Cathey v. Missouri, K. & T. R. Co. of Texas, 104 Tex. 39, 133 S.W. 417, 33 L.R.A.,N.S., 103; Stinnett v. Paramount-Famous Lasky Corp. of New York, Tex. Com.App., 37 S.W.2d 145; Great American Indemnity Co. v. Dabney, Tex.Civ. App., 128 S.W.2d 496, 500.

3. Vicksburg & Meridian Railroad Co. v. O'Brien, 119 U.S. 99, 7 S.Ct. 118, 30 L. Ed. 299; McCandless v. United States, 298 U.S. 342, 347, 56 S.Ct. 764, 80 L.Ed. 1205; Bihn v. United States, 328 U.S. 633, 66 S.Ct. 1172, 90 L.Ed. 1485.