John H. JACKSON, Appellant,

v.

SOUTHERN RAILWAY COMPANY,
Appellee.

No. 19901.

United States Court of Appeals
Fifth Circuit.

April 4, 1963.

Rehearing Denied June 7, 1963.

R. Beverly Irwin, T. J. Lewis, T. J. Lewis, Jr., Atlanta, Ga., for appellant.

Edgar A. Neely, Jr., Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, and POPE * and JONES, Circuit Judges.

POPE, Circuit Judge.

██ Appellant, a citizen of Georgia, brought this action against Southern Railway Company, a corporation of the State of Virginia,[1] seeking recovery of damages for personal injuries in an amount substantially in excess of $100,-000. The jury returned a verdict for plaintiff in the sum of $2500. The principal contention upon this appeal by the plaintiff is that the trial court committed reversible error in giving to the jury an instruction on comparative negligence

---

* Of the Ninth Circuit, sitting by designation.

1. An examination of the complaint indicates how close the plaintiff came to alleging lack of jurisdiction. The complaint alleged: " * * * that said defendant is a citizen of the State of Virginia, with headquarters in Richmond, Virginia, and with the principal office and place of doing business at 99 Spring Street, S.W., Atlanta, Fulton County, Georgia, and has a designated agent for service, Mr. M. W. Taylor at said address, within the jurisdiction of this Court; * * *." Jurisdiction in the court below could only be invoked under Title 28 U.S.C. § 1332, the so-called "diversity" jurisdiction, which provides that, "[f]or the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." See Canton v. Angelina Casualty Company, 5 Cir., 279 F.2d 553. Had the allegation quoted above been to the effect that "Its principal office and place of doing business" etc. was at 99 Spring Street, it would be difficult to say that the plaintiff had not pleaded a lack of diversity. However, in stating that "*the* principal office and place of doing business" etc. was at 99 Spring Street, when read with the allegation of "headquarters in Richmond, Virginia", may well mean simply that the principal office in Georgia was at 99 Spring Street. No question as to diversity of citizenship was raised in the court below; indeed the answer expressly admitted "that this court has jurisdiction of the cause and of the parties." While such an admission would be without significance in determining the court's

and that the smallness of the verdict is attributable to that error.

The record shows that on December 22, 1959, plaintiff was riding in a mail car as a United States postal railway mail clerk. The car was a part of the defendant's passenger train southbound. At a point near Mableton, Georgia, the train ran through a red light stop signal set against its travel past that point and head on into a freight train standing on the same track and headed in the opposite direction. Plaintiff, who was standing in the mail car slightly to the rear of the center thereof, was thrown forward into a corner of the car near the front and received injuries from which the jury might have ascertained, on the basis of evidence received, that plaintiff had suffered quite substantial damages. There was evidence from which the jury might have found that as a result of the accident plaintiff was disabled from working for a considerable length of time and lost earnings in excess of $12,000. He underwent an operation for the relief of his injuries; he testified to severe pain and suffering; and there was evidence that some of his injuries were permanent. His medical and hospital bills were in excess of $1300.

Appellant asserts that what he calls a "grossly inadequate verdict" was due to the trial court's error in giving an instruction on comparative negligence in which the jury were told in substance that if the plaintiff was himself negligent and the negligence of plaintiff was less than that of the defendant, plaintiff's recovery "would be reduced in proportion to the amount of default attributable to him." [2] Plaintiff objected to the giving of this instruction on the ground that there was no evidence to support or warrant it.

The contention of the defendant with respect to the propriety of that instruction, a contention with which the trial court agreed, is based upon evidence given by the several railway mail clerks who were in the mail car at the time. This shows that one Billingsley, a mail clerk, stood at the door of the mail car and looked ahead as the train was approaching the point where the collision occurred. Jackson, the plaintiff, was then some distance away, he said 20 feet from the door. He was in a position where he could neither see out the door nor see ahead along the train. Billingsley, who had gone to the door, evidently for the purpose of throwing out mail as it passed the next town, looked ahead and said that the train had run a "red board"; that it had gone through a red stop signal, and that the train was not stopping. According to Billingsley he said: "I don't believe he could stop at the red light; the lights are red, and I don't believe he can stop."

Billingsley estimated that this was some 20 seconds before the actual colli-

---

jurisdiction, we think that it must be said that the trial court determined that it had jurisdiction under the rule that "Every court in rendering a judgment, tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter." Stoll v. Gottlieb, 305 U.S. 165, 171–172, 59 S.Ct. 134, 137–138, 83 L. Ed. 104; cf. Yanow v. Weyerhauser Steamship Company, 9 Cir., 274 F.2d 274. We think that by the judgment here under review, the trial court has in effect adjudged, with respect to Southern Railway Company, that it was not true that "its principal office and place of doing business" was in Georgia.

2. After a charge to the jury to the effect that plaintiff would be barred from any recovery in the event of his own con-

tributory negligence, the court's charge relating to comparative negligence proceeded as follows: "I charge you, gentlemen of the jury, that if you believe from the evidence that the defendant was negligent and if you further believe from the evidence that a particular plaintiff could not in the exercise of ordinary care have avoided the consequences of the negligence of the defendant, but if you believe that such plaintiff was himself negligent and if you further believe that such negligence on the part of such plaintiff was less than the negligence of the defendant contributing to the alleged injury to such plaintiff, then, and in such event, such plaintiff could recover, but his recovery would be reduced in proportion to the amount of default attributable to him."

sion occurred. He did not yell; he merely made the statement. Jackson heard this statement and replied that it was on a double track. According to Jackson's testimony he said: "You crazy idiot, its double track." Billingsley continued to watch, and he then said: "No he's on the same track, watch out, they're going to hit." Billingsley shouted this last warning. He estimated that the collision occurred "five or six or seven seconds" after that second alarm.

McClure, another clerk, who was in charge of the car, told about this second alarm from Billingsley. When Billingsley said there was going to be a collision: "* * * one of the boys said 'you mean that?' And he said, 'Yes, I mean it, and brace.' Well, of course, in the next four or five seconds, or maybe eight seconds nobody would time that sort of thing or could, the impact came." When asked to estimate the time that elapsed after that last warning until the collision, Jackson estimated that it was fifteen seconds.

When that warning of a collision came, Jackson grabbed the rack on which the mail sacks were hung and when the impact came he was thrown some 20 feet forward landing in the forward corner of the mail car. Billingsley, in the meantime, had moved to the center aisle between the racks and grabbed the side of a distributing table. Although the table was bolted to the floor, when the collision occurred Billingsley pulled it loose and he was found on the floor covered with mail sacks.[3]

The basis for the defendant's claim of contributory negligence is the showing that there was in the car an emergency brake valve; that Jackson did not pull the cord on that valve, and that had it been pulled, the train's emergency brake system would have been put in action. The only evidence as to where this valve

was located comes from the testimony of Billingsley that as he observed the red lights from his position in the door the emergency cord was six to eight feet from him. It does not appear in which direction that was. The record contains an exhibit, No. 14, which is a diagram of the car in question. This does not show where the emergency valve was located. Its location may well have been at the rear wall of the car which was some eight feet from the door, or it may have been on the locker against the rear wall which would be some seven or eight feet from the door. Apparently that would be a likely location for the valve, though there is no evidence to that effect. Jackson was farther away from that location than Billingsley at that time.

The defendant's contention was that Jackson, who had previous experience as a railroad fireman, was negligent in not going to that emergency valve and pulling the cord after he had been warned by Billingsley that a collision was about to occur. The contention was and is that Jackson had fifteen seconds in which to do that because according to the latter's testimony fifteen seconds elapsed between the time when Billingsley shouted his warning and the time when the collision occurred.

We think that this contention is manifestly fallacious. A showing of negligence on the part of Jackson cannot be based upon the time which actually elapsed between Billingsley's warning and the collision. That has no bearing upon the question of Jackson's negligence. The question is what did Jackson then know as to the imminence of the collision or as to a possible time lapse. So far as the record is concerned, it shows nothing. Jackson could not see out of the car; he had no way to estimate whether the collision would happen in one second,

---

3. There was a fourth mail clerk in the car, one Gardner, who heard Billingsley call out but did not hear what he said. Gardner was near the table to which Billingsley clung and to which Billingsley was "moving in a hurry". In some inexplicable manner, after the accident Gardner found himself "hanging out of the door, and the mail was all over him." As the door was to the rear of the table it is difficult to understand how Gardner got there unless the car rebounded after the collision.

two seconds, or half a second. He did the only thing which he could possibly do to protect himself from an accident—he grabbed the racks and hung on with both hands.

█ It would be fantastic to assume that Jackson should have measured the distance to the valve, wherever it was, and calculated that he had time to run to the valve and then run back to grab the racks. Furthermore there is nothing to show where the valve was aside from its distance from Billingsley. For aught that appears here Jackson might have to pass over or around mail pouch racks to get there. A person confronted with a sudden peril not arising from any fault of his own, "will not be held negligent when he exercises the right to take care of himself in order to avoid injury, provided he acts with such care as an ordinarily prudent person would exercise." Everett v. Clegg, 213 Ga. 168, 170, 97 S.E.2d 689, 691.

█ The court correctly charged the jury that in this case: "The defendant owed to [the plaintiff] the duty of extraordinary care, the same duty it would have owed to any passenger on the defendant's train." We do not have any reason to question this portion of the charge given by the learned trial judge who was familiar with Georgia law. That a railway mail clerk is as a matter of law a passenger of the carrier is supported by a great weight of authority.[4] We have no reason to believe that Georgia would follow any different rule and this rule is certainly consistent with the definition of a passenger under the Georgia Code.[5] The mail clerk's fare is of course a part of the compensation which the Post Office pays the railroad for hauling the mail car. The proposition that any person in the position of a passenger, whether in a passenger car or in a mail car, owes a duty to stop a run-away train by throwing on the emergnecy brake system is something that we cannot accept. Even if there ever were such a duty, certainly this is not such a case. The complete absence of evidence to show any lack of care on Jackson's part made the giving of the instruction here involved completely out of order.

█ It is the settled law of Georgia that it is error for a trial court to instruct a jury on contributory negligence when there is no evidence of such negligence.[6] The rule can be no different with respect to an instruction based upon the Georgia statute relating to comparative negligence which provides that if the complainant and the agents of the company are both at fault, the former may recover but the damages shall be diminished by the jury in proportion to the amount of the fault attributable to him. Ga.Code Ann. § 94–703.[7]

4. Southern Ry. Co. v. Harrington, 166 Ala. 630, 52 So. 57; Malott v. Central Trust Co., 168 Ind. 428, 79 N.E. 369; Louisville & N. R. Co. v. Dougherty, 170 Ky. 10, 185 S.W. 114, L.R.A.1916E, 464; Libby v. Maine Cent. R. Co., 85 Me. 34, 26 A. 943, 20 L.R.A. 812; Baltimore & O. R. Co. v. Davis, 152 Md. 427, 137 A. 30; Decker v. Chicago, M. & St. P. Ry. Co., 102 Minn. 99, 112 N.W. 901; Nix v. Gulf, Mobile & Ohio R. Co., 362 Mo. 187, 240 S.W.2d 709; Hoskins v. Northern Pac. Ry. Co., 39 Mont. 394, 102 P. 988; Seybolt v. New York, etc., R. Co., 95 N.Y. 562; Miller v. Pennsylvania R. Co., 368 Pa. 507, 84 A.2d 200; Illinois Cent. R. Co. v. Porter, 117 Tenn. 13, 94 S.W. 666; Carter v. Washington & O. D. Ry., 122 Va. 458, 95 S.E. 464.

5. Ga.Code Ann. § 18–201: "A passenger is one who travels in some public conveyance by virtue of a contract, express or implied, with the carrier as to the payment of the fare or that which is accepted as an equivalent therefor. * * *"

6. Bain v. Athens Foundry & Machine Works, 75 Ga. 718, 725; Healan v. Powell, 91 Ga.App. 787, 793, 87 S.E.2d 332, 336; Hare v. Southern Railway Company, 61 Ga.App. 159, 161, 6 S.E.2d 65, 66; Andrews Taxi & U-Drive-It Company v. McEver, 101 Ga.App. 383, 386, 114 S.E.2d 145, 148.

7. The entire section reads as follows: "No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent or is caused by his own negli-

If we assume that since this was a diversity case, tried in a federal court, the question of what matters are to be submitted to a jury is governed by federal law, Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691, we still reach the same result as to the impropriety of the instruction here in question.

■ In holding that a trial by jury in a federal court is to be governed by federal law, the Supreme Court spoke in Herron v. Southern Pacific, 283 U.S. 91, 95, 51 S.Ct. 383, 384, 75 L.Ed. 857, as follows: "In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. This discharge of the judicial function as at common law is an essential factor in the process for which the Federal Constitution provides. As was said by Mr. Justice Story, in United States v. Battiste, 2 Sumner 240, 243: 'It is the duty of the Court to instruct the jury as to the law; and it is the duty of the jury to follow the law, as it is laid down by the Court.'"

The Court also quoted from the oft-cited case of Capital Traction Company v. Hof, 174 U.S. 1, 13–14, 19 S.Ct. 580, 43 L.Ed. 873. Such is still the law. New York, N. H. & H. R. Co. v. Henagan, 364 U.S. 441, 81 S.Ct. 198, 5 L.Ed.2d 183.

■■ It is improper for a court to instruct on a proposition of law about which there is no evidence. McCarthy v. Pennsylvania R. Co., 7 Cir., 156 F.2d 877; Jones v. Weaver, 9 Cir., 123 F.2d 403, 407. Such an instruction should be refused. Willitt v. Purvis, 5 Cir., 276 F.2d 129, 132. Here, under the circumstances present, where the giving of this instruction improperly permitted the jury to find the plaintiff guilty of comparative negligence, the giving of the instruction was prejudicial error. Fillipon v. Albion Vein Slate Co., 250 U.S. 76, 82, 39 S.Ct. 435, 437, 63 L.Ed. 853.[8] McCandless v. United States, 298 U.S. 342, 347–348, 56 S.Ct. 764, 80 L.Ed. 1205; Farris v. Interstate Circuit, 5 Cir., 116 F.2d 409, 412; Standard Accident Insurance Co. v. Terrell, 5 Cir., 180 F.2d 1, 4.

Accordingly, the judgment is reversed and the cause is remanded for a new trial.

## ON REHEARING

### PER CURIAM.

Upon petition for a rehearing appellee asserts that the court has misread the record, which, it asserts, showed Jackson's ability and duty to protect himself by applying emergency brakes as the train approached the collision point. The following assertions are made: that photographs in evidence showed that the emergency cord extended the entire length of the car; that Jackson could see the red lights ahead through the car windows; and that he could have run to the car door to look for himself. We find no such evidence in the record. The significant fact noted in our opinion is that Jackson, after warning, "had no way to estimate whether the collision would happen in one second, two seconds, or half a second." It is for this reason that the unsupported assertions now made would be irrelevant if true.

■■ It is elementary that the burden of proof of comparative negligence on the part of a plaintiff is on the defendant. Western & Atlantic R.R. v. Mathis, 63 Ga.App. 172, 10 S.E.2d

gence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of fault attributable to him."

See also § 105–603 as follows: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained."

8. "And of course in jury trials erroneous rulings are presumptively injurious, especially those embodied in instructions to the jury; and they furnish ground for reversal unless it affirmatively appears that they were harmless."

457, 460. The failure of the record to show circumstances requiring Jackson to act in the manner appellee asserts he should have done amounts to a simple failure of proof.

The petition for rehearing is denied.