27210. WICKER *et al. v.* FIDELITY AND CASUALTY COMPANY OF NEW YORK *et al.*

Decided January 23, 1939. Rehearing denied March 1, 1939.

*McCullar & McCullar,* for plaintiffs.

*Harris & McMaster, John M. Slaton, M. J. Yeomans, attorney-general, O. H. Dukes, E. J. Clower,* for defendants.

Sutton, J. The claim for compensation in this case, under the workmen's compensation law, was denied by a single director of the Industrial Board, and his award was approved by the full board, and was then affirmed by the superior court. The claimant excepted. The award of the single director is as follows: "Mack Wicker sustained an accident while driving a truck on January 19, 1934, and as a result thereof died the following day. Claim was brought first by his parents as partial dependents, and then by two minor brothers. Wicker was driving a truck belonging to B. A. English, which was engaged in hauling overburden and clay for the Champion Coated Paper Company in Washington County, Georgia. After completing the day's work he started to return to Sandersville where the truck was kept for the night, and which was some thirteen or fourteen miles away. Fred Battle, who was on the truck with Wicker, testified that after leaving the premises of the Champion Coated Paper Company Wicker stopped the truck at the Olive Hill church and remained there for about thirty minutes, and then made a second stop at the Poplar Springs church. Wicker then proceeded towards Sandersville. Just after he reached the city limits he lost control of the truck, which jumped a ditch and

ran into the front yard of Pierce Woods's house, and then turned back towards the road striking the same ditch again. It was drizzling rain and almost dark when the accident occurred. There would have been ample time had the two stops not been made to have reached Sandersville before dark. The evidence of Fred Battle is corroborated by that of Luther Innis, who kept time for the trucks that were engaged in hauling for the Champion Coated Paper Company. On the day of the accident he left the premises of the Champion Coated Paper Company about a half an hour after Wicker left and passed him at the Olive Hill church. There was another truck there also. Wicker and two or three other drivers were standing around talking. He also testified that Wicker had had ample time to get to Sandersville by the time that he saw him. Wicker voluntarily stepped aside from his employment in stopping at the two churches. These stops had no connection with his employment and delayed him in getting to Sandersville, where he was supposed to take the truck. The accident occurred while he was proceeding along the direct route that he was supposed to travel, but at a time when he should have and could have reached his destination, except for the fact that he voluntarily stepped aside from his employment. The director therefore finds that the accident did not arise out of and in the course of the employee's employment, and the claim for compensation is denied and the case is dismissed for this reason. No findings are made on the several other issues raised, it not being required that findings of fact be made on all issues where compensation is denied on one or more issues."

It will be seen from this award that the claim for compensation was denied solely on the ground that the deceased, Mack Wicker, had stepped aside from his employment, and that the accident causing his death did not arise out of and in the course of his employment. Was such a finding authorized by the evidence? We think it was not. The substance of the pertinent testimony is set out in the award. Mack Wicker was a truck driver, and was engaged in hauling the products of the Champion Coated Paper Company in Washington County, Georgia. The mine of this company was located 13½ miles west of Sandersville. The deceased lived in Sandersville where he kept the truck at night. It appears that he hauled the products of the company from the mine to the railroad at Sandersville. He had finished his day's work and was driv-

ing the truck to Sandersville, where his duties required him to take it, and had actually reached Sandersville when the fatal accident occurred. The cause of the accident was that he lost control of the truck and ran into a ditch, and there is nothing in the record to show that this would not have occurred had he not stopped for about thirty minutes on the way. We do not think that the thirty-minute stop at the church on the way, where he waited for another truck-driver, could be found or held to be a deviation or a stepping aside from the duties of his employment; but even if it could be, the accident did not happen then. It happened while he was proceeding along his direct route to Sandersville, where he was supposed to take the truck for the night, and in fact after he had reached the city limits of Sandersville, and at a time when he had certainly resumed the duties of his employment, if there was ever any deviation therefrom. It was held in *Atlanta Furniture Co.* v. *Walker,* 51 *Ga. App.* 781 (181 S. E. 498) : "Although a servant may have made a temporary departure from the service of his master, and in so doing may for the time have severed the relationship of master and servant, yet where the object of the servant's departure has been accomplished and he has resumed the discharge of his duties to the master, the responsibility of the master for the acts of the servant reattachés. Where a servant whose duty in the employment of the master is to drive a truck and to make delivery of an article of merchandise at a designated place, and then return with the truck to the garage where it is to be placed for the night, and where the servant, after having proceeded to the place for delivery of the merchandise, instead of proceeding to return the truck to the garage, makes a temporary departure from the service of the master by proceeding with the truck on a devious course from that necessary to return it to the garage and goes to his own home on a mission of his own, and where, after attending to this mission, he proceeds, about 9 o'clock at night, to return the truck to the garage as his duties to the master require him, the servant has then resumed his duties to the master, and in the operation of the truck for the purpose of returning it to the garage he is acting within the scope of his authority and is in the discharge of his duty to the master." It is said in 71 C. J. 678, § 426: "Where an employee breaks the continuity of his employment for purposes of his own and is injured before he brings himself back into the line of his

employment, the injury does not arise 'out of and in the course of' his employment or 'out of' or 'in the course of' the employment; but where the personal mission has been accomplished and the employee is once more engaged in the duties of his employment when injured, the injury arises 'out of and in the course of' the employment." In 7-8 Huddy, Cyclopedia of Automobile Law, 259, § 96, it is said: "It is true that when the servant has temporarily diverged from the course which he should have taken, he may properly be said to have resumed the master's business when he is returning to the proper course." See also *Holliday* v. *Merchants &c. Transportation Co.*, 161 *Ga.* 949 (132 S. E. 210); s. c. 32 *Ga. App.* 567 (124 S. E. 89); *Glens Falls Indemnity Co.* v. *Sockwell*, 58 *Ga. App.* 111 (197 S. E. 647). The award of the Industrial Board was unauthorized under the law and the facts, and the judge of the superior court erred in affirming it.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*