28139. WESTERN & ATLANTIC RAILROAD *v.* MATHIS.

DECIDED JULY 16, 1940. REHEARING DENIED JULY 30, 1940.

*Walton Whitwell, D. W. Mitchell,* for plaintiff in error.

*R. Carter Pitman, Jack B. Ray,* contra.

GARDNER, J. The plaintiff, seeking recovery for personal injuries, brought an action against the railroad company, and alleged, that the defendant drove its train across the Hamilton Street crossing in Dalton, a city of 11,000 people, at a speed of 55 miles per hour, in violation of a city ordinance limiting train speed to fifteen miles, and struck the automobile of the plaintiff, demolishing it and injuring him; that the defendant rang no bell, gave no signal, failed to keep a constant and vigilant lookout, failed to reduce the speed of the train while it approached from around a curve with obstructions obscuring the view, and failed to reduce the speed notwithstanding it was about 6:45 in the morning, semi-dark, misty, and rainy; that the train was a south-bound passenger-train and about an hour late; that the defendant maintained no watchman or electric warning device at the crossing; and that the plaintiff approached the crossing at a speed not in excess of eighteen miles per hour, while looking and listening, and without hearing any whistle, bell, or noise, or seeing anything to indicate the approach of the train.

The defendant demurred generally and specially. The court overruled the demurrers, and the defendant excepted pendente lite. The defendant denied the allegations of negligence and injury, and for further plea insisted that any injury that arose to the plaintiff "was caused by his own carelessness and failure to exercise any degree of care whatsoever in approaching said railroad crossing, in that had he merely turned his head or cast his eye to the west, as he approached this railroad crossing at any point from 100 feet south of said crossing, that he would have been able to have seen defendant's passenger-train approaching from the north, and that had plaintiff's car been equipped with good and serviceable brakes, and had he not been traveling at a dangerous and reckless rate of

speed in excess of twenty-five miles per hour, he could have applied said brakes and brought his automobile to a stop before reaching said tracks," and that "the plaintiff was guilty of negligence per se, which proximately contributed to his injury in operating his automobile upon Hamilton Street in the City of Dalton in excess of twenty-five miles per hour, in violation of a valid city ordinance." The trial resulted in a verdict of $2000 for the plaintiff. The defendant moved for a new trial. The court overruled the motion, and the defendant excepted, assigning error only on the general grounds. The defendant prosecuted no assignment of error on the ruling of the court on the demurrers.

Under the insistence of able counsel for plaintiff in error, the assignment of error suggests in effect a number of queries, in a consideration of which will lie the merit of the assignment. First, was the negligence of the defendant established? Second, was the comparative negligence, if any, of the plaintiff sufficient to bar, as a matter of law, the plaintiff's recovery? Third, could the plaintiff in the exercise of ordinary care, as a matter of law, have avoided the negligence of the defendant when it became apparent, or, in the exercise of ordinary care, should have become apparent? Fourth, was the testimony of the plaintiff as a witness so vague, equivocal, and self-contradictory as to bar, as a matter of law, the plaintiff's recovery? Fifth, was the testimony of the plaintiff as a witness, that he did not see the train in time to have avoided, in the exercise of ordinary care, the negligence of the defendant, so incredible, impossible, or inherently improbable as to bar, as a matter of law, the plaintiff's recovery? Sixth, were not all the questions raised for the determination of the jury, on whose verdict must rest the judgment of this court? In reviewing the assignment of error the court must consider all questions in the light of the following rules: The presumption is that the verdict was based on a fair consideration of all matters presented to it. McCullough v. Clark, 88 W. Va. 22 (2) (106 S. E. 61). This court must construe the evidence most strongly in favor of the verdict (Martin v. Hutchinson, 26 Ga. App. 24 (2), 105 S. E. 313), and "must deal with the case in its most favorable light" sustaining the verdict (Western & Atlantic R. Co. v. Ferguson, 113 Ga. 708, 714, 39 S. E. 306, 54 L. R. A. 802). All issues, having arisen on conflicting testimony, must be resolved in favor of the party prevail-

ing in the verdict. Wiseman *v*. Ryan, 116 W. Va. 525 (182 S. E. 670). The court will not disturb a verdict where there is sufficient evidence to support it. *City of Thomasville* v. *Crowell, 22 Ga. App.* 383 (7) (96 S. E. 335); *Shepard* v. *State, 179 Ga.* 615 (2) (176 S. E. 634).

1. In considering the first query we think that the facts of the case were not open to the question whether the injuries of the plaintiff were caused *solely* by his own negligence. There was evidence to the effect, and the jury was authorized so to find, that the plaintiff, approaching the crossing at a speed of fifteen to twenty miles per hour, applied his brakes on seeing the train, and stopped his car completely. Up to this point the plaintiff had sustained no injury; it was by the impact of the train that the injuries arose, and without that ensuing, subvening agency the plaintiff would have remained *without* injury. Upon the question whether the negligence of the defendant was established, the evidence demanded a finding, on the testimony of the defendant's agents, that the train was running in excess of the limit fixed by the ordinance, and accordingly that the defendant was chargeable with negligence per se. Beyond that, the evidence of the plaintiff authorized a finding that the speed of the train, running fifty-five minutes late, was moving fifty-five to sixty miles an hour, over a much-used crossing in a city of 11,000 population, about 6:45 o'clock in the early morning that was half-dark, rainy, misty, and foggy, and at the time of morning when factory whistles were accustomed to blow their morning notices to their employees; and that the train approached the crossing around a curve, without the assistance of a crossing watchman or electric warning device, and without ringing the bell. The negligence of the defendant was established, and conclusively as to negligence per se. The injury having been proved, on the evidence of the plaintiff a prima facie case of negligence arose. *City Council of Augusta* v. *Hudson,* 88 *Ga.* 599 (3) (15 S. E. 678). The question of proximate cause was for the jury.

2. "The doctrine usually referred to as that of contributory negligence is not the law of this State, inasmuch as that term, properly used, expresses not such negligence as would diminish, but only such negligence as would preclude a recovery. The doctrine which here obtains can be and is more accurately and properly designated as that of comparative negligence." *Central of Georgia*

*Railway Co.* v. *Larsen,* 19 *Ga. App.* 413, 417 (91 S. E. 517), and cit. Comparative negligence on the part of the plaintiff is a defense available to the *defendant,* which must be *proved. Lamb* v. *Elkin,* 16 *Ga. App.* 770 (86 S. E. 413) ; *Central of Georgia Railway Co.* v. *North,* 129 *Ga.* 106 (58 S. E. 647) ; *Hardwick* v. *Figgers,* 26 *Ga. App.* 494 (2) (106 S. E. 738). It is not incumbent on the plaintiff to allege and prove his own freedom from fault or negligence. *Mayor &c. of Savannah* v. *Waters,* 27 *Ga. App.* 813 (2) (109 S. E. 918) ; *Atlantic Coast Line Railroad Co.* v. *Wildman,* 29 *Ga. App.* 745 (4) (116 S. E. 858). However, in the instant case, the plaintiff did allege freedom from negligence, in that he approached the crossing at a speed of not over eighteen miles an hour, and while looking and listening, and without hearing any whistle, bell, or noise or seeing anything to indicate the approach of the train, and during the morning in question which was semi-dark, misty, and rainy. On the proof, he sought to show by himself and others that he did not approach at a speed greater than eighteen miles per hour, and by his own testimony that when he was about a hundred feet distant from the track he looked north in the direction from which the train was coming, and saw that the track was clear, and when within fifty feet from the track he looked south and saw that the track was clear, and then at thirty feet from the track he looked again north, and that in so doing as his car reached a point ten to fifteen feet from the track he discovered the train fifty feet away, bearing down upon the crossing, when at this point he applied his brakes and stopped just on the crossing and was struck by the side of the engine, apparently the steam cylinder, and that his approach to the crossing was on a morning that was half-dark and misty. Whether the allegations of the petition and the evidence of the plaintiff, as to negativing negligence by the plaintiff, were sufficient to bar recovery was a jury question. The language of *Martin* v. *McAfee,* 31 *Ga. App.* 690, 695 (122 S. E. 71), is apropos : "Even assuming that the petition may disclose [and that the evidence may disclose] some negligence on the part of the plaintiff, it does not appear therefrom, as a matter of law, that this and not the negligence of the defendant was the cause of his injury." On the other hand, the defendant sought to carry the burden of showing comparative negligence by the plaintiff, contributing to his injury, with evidence that the plaintiff drove at a reckless rate, under

the circumstances, of forty miles per hour, and, though he made an effort to turn to the right, struck the train which had already come upon the crossing and just ahead of the approach of the car, without heeding the sound of the bell or whistle, which the engineer was ringing and blowing, and in reckless disregard of whether the train was approaching. The jury resolved these facts against the defendant, as not barring a recovery, however much they may have affected the quantum of the verdict. There was nothing in the showing by the defendant which demanded, as a matter of law, that the negligence of the plaintiff was sufficient to bar a recovery, or that it was the proximate cause of the injury.

3. "The duty imposed by law upon all persons to exercise ordinary care to avoid the consequences of another's negligence does not arise until the negligence of such other is existing, and is either apparent, or the circumstances are such that an ordinarily prudent person would have reason to apprehend its existence. In such cases and in such cases only does the failure to exercise ordinary care to escape the consequences of negligence entirely defeat a recovery." *Western & Atlantic R. Co.* v. *Ferguson,* and *Central Railway Co.* v. *Larsen,* supra. The failure of the plaintiff to use ordinary care "to avoid the consequences of the defendant's negligence after it was or should have been apprehended would constitute matter for defense, to be pleaded by the defendant, unless affirmatively shown by the allegations of the petition" (*Watts* v. *Colonial Stages Co.,* 45 *Ga. App.* 115, 119, 163 S. E. 523), and proved by the defendant. "The burden of proof rests upon the defendant to establish this defense." *Williams* v. *Southern Railway Co.,* 126 *Ga.* 710 (55 S. E. 948). The defendant in the instant case, having properly pleaded the defense, sought to show that the circumstances of vision within one hundred feet of the crossing from the direction of approach by the plaintiff were such that had the plaintiff had good brakes on his car, and had he *simply looked* in the direction of the approach of the train, he could have seen the train and stopped his car and avoided the negligence of the defendant, regardless of its degree of negligence. Such contention of fact became a question for the jury; and the jury having found adversely thereto, this court is powerless to interfere. With reference to what the plaintiff should do as to looking and listening, in the exercise of ordinary care to avoid the defendant's negligence, and

what this court should do, as a matter of law, on such issue, this court, in *Southern Railway Co.* v. *Slaton,* 41 *Ga. App.* 759, 761 (154 S. E. 718), stated that the court can not "decide for itself, and as a matter of law, what such a person lawfully entering upon a public or private railroad crossing must or must not do in order to free himself of a guilt of a lack of ordinary care constituting the proximate cause of his injury. On the contrary, it has been many times ruled that such a question is one to be determined by the jury as a question of fact, rather than by the court as a matter of law." In this connection it was held in *Southern Railway Co.* v. *Alexander,* 59 *Ga. App.* 852 (8) (2 S. E. 2d, 219), that even though the witness testified that at thirty feet from the crossing she looked and did not see any train, yet if she had again looked at any time within that thirty feet she could have stopped her car and prevented the accident, she was not barred from recovery as a matter of law; the court saying, "it does not appear as a matter of law that the plaintiff was barred by her own negligence." The fact that the plaintiff alleged and sought to prove his own lack of negligence would not relieve the defendant of its burden of proving this defense, save only as such showing conclusively might establish such defense, which we do not think true in the instant case. In this connection see *Atlantic Coast Line R. Co.* v. *Wildman,* supra.

4. Consider now the question whether the testimony of the plaintiff was so vague, equivocal, and self-contradictory as to bar, as a matter of law, his recovery. The rule is: "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is self-contradictory, vague, or equivocal. . . And he 'is not entitled to a finding in his favor if that version of his testimony the most unfavorable to him shows that the verdict should be against him.'" *Southern Railway Co.* v. *Hobbs,* 121 *Ga.* 428 (49 S. E. 294). This rule is not germane and applicable, as to a plaintiff, save where the plaintiff is the *sole* witness by whose testimony alone it is sought to establish the allegations of his petition; contrariwise, where other adverse evidence offered supports a finding against the plaintiff. *Southern Ry. Co.* v. *Frazier,* 40 *Ga. App.* 364 (149 S. E. 425). As to this principle see *Western & Atlantic R. Co.* v. *Evans,* 96 *Ga.* 481 (23 S. E. 494), where the plaintiff was the sole witness in his own behalf; *Freyermuth* v. *South Bound R. Co.,* 107 *Ga.* 31 (32 S.

E. 668), where the plaintiff was the sole witness in his own behalf, other evidence requiring an adverse finding; *Ray* v. *Green,* 113 *Ga.* 920 (2) (39 S. E. 470), where it was held that if a plaintiff's testimony is uncertain and contradictory it should be construed most strongly against him, and a nonsuit may be granted unless there is evidence by other witnesses tending to support the allegations of the petition. Also *Farmer* v. *Davenport,* 118 *Ga.* 289 (45 S. E. 244), where the plaintiff was the only witness in his own behalf. In *Glens Falls Indemnity Co.* v. *Jordan,* 56 *Ga. App.* 449, 457 (193 S. E. 96), it was said: "It is well settled that the principle decided [in *Southern Ry. Co.* v. *Hobbs,* 121 *Ga.* 428 (49 S. E. 294), and *Turnmire* v. *Higgins,* 176 *Ga.* 368 (168 S. E. 5)] does not apply where the plaintiff introduces other witnesses to establish facts necessary for a recovery." In *City of Thomasville* v. *Crowell,* supra, it was said: "'If the plaintiff introduce other witnesses whose testimony is sufficient to establish the allegations of the petition,' he may nevertheless prevail." In the instant case the plaintiff was not the *only* witness, but there were several who testified in support of the allegations of the petition. Accordingly, the rule with reference to vagueness, equivocation, and self-contradiction by the plaintiff can not operate, as such, to bar, as a matter of law, the plaintiff's recovery. Such evidence of the plaintiff, however, is proper for the consideration by the jury, in view of all issues made by the pleadings, and in the light of and in conjunction with all evidence in the case, whether offered by the plaintiff or by the defendant, for a determination by their verdict. When so considered, the jury found for the plaintiff.

5. Was the testimony of the plaintiff as a witness that he did not *see* the train in time to avoid the negligence of the defendant so incredible, impossible, or inherently improbable as to bar, as a matter of law, the plaintiff's recovery? "Courts and juries are not bound to believe testimony as to facts incredible, impossible, or inherently improbable. Great physical laws of the universe are witnesses in each case, which can not be impeached by man, even though speaking under the sanction of an oath." *Patton* v. *State,* 117 *Ga.* 230 (5) (43 S. E. 533). On direct examination the plaintiff testified: "When I was along, I would say, around a hundred feet from the crossing, I looked north [in the direction of the train], and the track was clear; and when I got within fifty

feet I looked south and around the service station, and saw it was clear there; and I imagine I was within thirty feet of the crossing, and I turned around and saw the train, and cut the car to the right to stop, and about the time it stopped the train hit it. In looking to the south I had to turn right around like this. I had to look around [two people in the front seat] at an angle backward. I saw no train coming from the south. And then I looked north when . . I guess I was thirty feet from the track. . . When I first saw the train it was coming across the sidewalk. I was on the right side of Hamilton Street [which was about sixty feet wide]. I wasn't over against the curb. I was out in the street. I imagine the train was fifty feet from me when I first discovered it. I applied the brakes and cut to the right, trying to miss the train. I did come to a stop. The engine hit the left front fender of my automobile. . . I think it must have been the steam cylinder on the side. . . I was knocked unconscious." On cross-examination, when questioned as to his evidence on a former trial, he testified that he looked "north at fifty feet, and then looked south," and that when he got "something like" fifty feet from the track, on looking "something like" as far as he could look towards Chattanooga, up the track, and saw no train, and then when about thirty feet he looked south, and then he was, to his "best judgment," about ten feet from the crossing when he saw the train crossing the sidewalk; and that he would not say the exact number of feet the train was from the point of collision. He reiterated that he was approaching the crossing at about eighteen miles per hour. He testified that when "I was within fifty feet of the crossing I could see Hawthorne Street; and I so testified before. . . My brakes were in good condition. . . When I got within fifty feet of the crossing, if I had seen a train I could have stopped before I got within striking distance of the train. As a matter of fact, an automobile going eighteen miles an hour and the brakes in good condition, I can stop within ten or fifteen feet. When I got within ten feet of the crossing I saw this train at the edge of the crossing, and I turned my car to the right, down south to the edge of the track, . . trying . . to keep off the tracks."

It clearly appears from this testimony that the plaintiff was basing all the facts to which he testified on opinions conceived out of swiftly-moving objects and events, on a semi-dark, misty, and rainy

morning, and not on careful, deliberate measurements taken with scientific instruments. It was the province of the jury to consider them in the light of all the circumstances, taking into consideration the credibility of the witness, and whether he was impeached by his evidence on a former trial, and in the light of other considerations such as it failing to appear to what extent the rate of speed of the car was diminished by the braking force when the brakes were applied ten or fifteen feet from the tracks, or what fraction of time, if any, elapsed after the car had come to a stop and until it was struck by the side of the engine, or how much the train had slowed before the impact, if any, or to what extent the car further traveled, in excess of the ten or fifteen feet, after the brakes were applied, when it cut to the right and moved toward the tracks but in a *circular* direction, or what the increase of time was for the greater distance circularly traveled, or to what extent the wet street lessened the time of braking the car, or the degree of visibility of the early morning, or other differentials impossible for this court to determine. Therefore this evidence of the plaintiff as a witness is not so incredible, impossible, or inherently improbable as to demand, as a matter of law, that he did in fact see the train in time to stop the car and avoid the negligence of the defendant. Fallacy would arise in the assumption by this court that all such estimates, cast out of human agency and made on a half-dark, misty, and rainy morning, were correct or *absolute*. *All of these matters* were for determination by the jury. Furthermore, this evidence of the plaintiff was not germane to the *establishment* of his cause of action under the *allegations* of the petition, but rather to the question whether it supported the defendant's defensive plea, that had the plaintiff looked as indicated he could have stopped the car and avoided the result of the defendant's negligence. The jury resolved this issue against the defendant.

6. All questions raised were for the determination of the jury, and, under the issues, ultimately to determine whether the negligence of the plaintiff or of the defendant was the proximate cause of the injury, and whether the negligence of the plaintiff contributed to the injury, affecting the quantum of the verdict.

*Judgment affirmed. MacIntyre, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. Conceding that the evidence showed

that the railroad company was guilty of some acts of negligence in the operation of its train on the occasion in question, I think that the evidence as a whole demanded a finding that by the exercise of ordinary care the plaintiff could have avoided the consequences to himself of that negligence. It is well settled that "the testimony of a party who offers himslf as a witness in his own behalf is to be construed most strongly against him when it is self-contradictory, vague, or equivocal. . . And he 'is not entitled to a finding in his favor if that version of his testimony the most unfavorable to him shows that the verdict should be against him.'" *Southern Ry. Co.* v. *Hobbs,* 121 *Ga.* 428 (49 S. E. 294). A cursory examination of the plaintiff's testimony in his own behalf shows that it is "self-contradictory, vague, and equivocal." For instance: It appears from his evidence that in approaching the crossing he first looked north to see if a train were coming from that direction, then south, and then north again at a time when he says he first saw the train and it was too late to avoid the collision. The distance he was from the crossing when he first looked north in the direction from which the train was coming, and when he looked north the last time and first saw the train, are very important factors in the case. On direct examination he swore: "When I was . . around *a hundred feet* from the crossing I looked north, and the track was clear, and when I got *within fifty feet* I looked south . . around the service-station and saw it was clear there; and I imagine I was within *thirty feet* of the crossing, and I turned around and saw the train." (Italics mine.) On cross-examination the plaintiff, referring to his testimony on a previous trial of the case, said: "I said I *looked north at fifty feet, and then lookd south.*" (Italics mine.) He further testified that when he was fifty feet from the crossing he could see all the way along the track north to Hawthorne Street.

Let us view the plaintiff's testimony in the light of the above-stated ruling. The undisputed evidence showed that Hawthorne Street was three hundred and four feet north of Hamilton Street; that there were no obstructions to prevent a person from seeing the entire railroad track from Hamilton Street to Hawthorne Street, when that person was fifty feet, or a hundred feet, from the crossing on Hamilton Street. The plaintiff testified that his eyesight was good, and that when he was fifty feet from the crossing he

looked up the track as far as Hawthorne Street and saw no train. If that were true, the train had not then reached Hawthorne Street. He testified that his automobile was proceeding at a speed of about eighteen miles an hour, and that when he was ten feet from the crossing, the train had just reached the crossing. It follows that the train ran three hundred and four feet while the automobile was going forty feet; and a simple mathematical calculation shows that the automobile covered the forty feet in less than two seconds, and that the train must have been running at a speed greater than one hundred miles an hour. The highest rate of speed that any witness testified that the train was running was sixty miles an hour. It follows as a mathematical fact that when the plaintiff was fifty feet from the Hamilton Street crossing the train must have reached Hawthorne Street, and that if he looked up the track to that street, as he said he did, he *must* have seen the train, and could have avoided the collision by applying the brakes and stopping his car. He testified that his brakes were in good condition and that he could have stopped his car "within ten or fifteen feet." Therefore, under the ruling that a party offering himself as a witness in his own behalf "is not entitled to a finding in his favor if that version of his testimony the most unfavorable to him shows that the verdict should be against him," the verdict in this case is contrary to law. The testimony of the plaintiff that he looked and did not see the train is contradicted by the undisputed mathematical fact that he must have seen it if he looked, and must yield to that fact. "Courts and juries are not bound to believe testimony as to facts incredible, impossible, or inherently improbable. Great physical laws of the universe are witnesses in each case, which can not be impeached by man, even though speaking under the sanction of an oath." *Patton* v. *State,* 117 *Ga.* 230 (5), supra. It is my opinion that under the testimony and the physical facts of the case a finding was demanded that the plaintiff by the exercise of ordinary care could have avoided the consequences to himself of the defendant's negligence; and that the court erred in overruling the motion for new trial based on the general grounds only.