28442.  FIDELITY & CASUALTY CO. *et al. v.* WICKER *et al.*

Decided October 28, 1940.

*John M. Slaton, Harris & McMaster,* for plaintiffs in error.
*C. B. McCullar,* contra.

Felton, J.   This is a compensation case arising by virtue of a bill of exceptions to the order of the judge of the superior court affirming the award of the Industrial Board awarding compensation to the claimant.   When the appeal was taken from the award of the board, the claimant made a motion to dismiss the appeal, on the ground that the questions raised therein were res judicata.   This motion was overruled, and no exception to that ruling was taken.   Motion is now made in this court to dismiss the writ of error, on the ground that the questions raised are res judicata, because the entire record in the case was reviewed by the Court of Appeals and passed on in *Wicker* v. *Fidelity & Casualty Co.,* 59 *Ga. App.* 521 (1 S. E. 2d, 464).

■ The motion to dismiss the writ of error is overruled, for the reason that the question raised in the motion is not a proper ground for such a motion.

■ This court, in *Wicker* v. *Fidelity & Casualty Co.,* supra, had before it the sole question whether there was such a stepping aside from the business of the master by the injured employee as would preclude a recovery of compensation.   The award denied compensation on that ground alone, and left open the other questions.   The question raised in this case is whether the deceased employee was employed by the Champion Coated Paper Company or by an independent contractor.   The evidence touching this employment was substantially as follows:   Luther Innis testified, that he was employed by the Champion Coated Paper Company, and had charge of hiring and firing the employees of the company; that he did not employ the deceased; that he employed a truck and driver from Ben English; that he hired and fired the trucks; that he kept the time of the trucks; that the name of the deceased did not appear on this time; that before the trucks arrived at the company he did

not know who the drivers would be; that the trucks were hired from the owners, and the drivers of the trucks were furnished by the owners; that he did not have any control over the drivers, but did over the trucks; that he would order clay and overburden to be hauled; that the only contract of employment touching the drivers was with the owners of the trucks; that the drivers would haul the clay and overburden according to his instructions; that the witness and his foreman supervised the work of the drivers in moving the overburden and clay; that time was kept by keeping the number of hours a truck hauled the products of the company; that the mine of the company was a distance of about thirteen miles from Sandersville; that it took about thirty-three minutes to drive in; that the time of the trucks stopped when the trucks left the shovel on the property of the mine; that at the time of the injury the truck was not loaded with anything; that the company did not own any of the trucks used, nor were they stored at the mine on the property of the company.

Leslie Vickroy testified, in substance, that in January, 1934, he was operating the mine in question for the company, and he was in charge of it; that he made the contracts and hired all the men over whom he had supervision; that he knew that the deceased was hauling overburden in a truck the day he was killed; that Innis was his foreman, and he could give the drivers instructions as to where they would operate; that the deceased's name did not appear on the pay-roll, because the company had no dealings with him but had hired the truck and driver from one English; that the reasons for doing business in this way were that by hiring the truck and driver from the owner the company would deal with more responsible individuals, and would have less liability in case of injury to a driver; that when he contracted for the trucks he would be dealing with one man instead of a group of men, and the one man would have the responsibility; that this scheme was employed to avoid as much liability under the Georgia compensation laws as possible; that the rate of compensation to the owner of the truck was per hour for the truck and driver, and the company had nothing to do with what the driver was paid; that the truck was hired as a material thing, and that the personality was furnished by the owner; that when it became necessary to fire a driver he would let the truck go, informing the owner that he did not want

it; that he employed the truck, and the employment started when the truck showed up at the mine and stopped when it left the mine; that he exercised no control over where the trucks were stored, or how they were used, or what was done with them after they left the mine; and that when it was necessary to haul a load to Sandersville the owner would be paid for the trip.

There was evidence that the truck driven by the deceased was owned by English; that the truck was stored in Sandersville, about thirteen miles from the mine; that the accident occurred after the truck had finished for the day and was being driven to Sandersville for the purpose of being stored for the night.

Under this state of facts the Industrial Board erred in finding that the deceased was an employee of the company after he had left the premises of the mine and was going to store the truck for the night. It is true that the company probably exercised such control over his actions while he was on the premises of the company and performing its work that he was an employee during that time; but we think it would be stretching the imagination to say that he was an employee after he left for the day. This very situation was in the mind of the officers of the company when the contract of employment of the truck was entered into; and though it might seem to work an injustice on the driver, we see no reason in law why the company could not make the contract as it did. It is at least probable that had the company contemplated its liability in cases of this kind it would have required that the equipment used in hauling its products be kept on the premises, or would have enacted rules and regulations covering the movement of such equipment after working hours. We are constrained to hold that the deceased driver was the employee of an independent contractor, and that it was error to award compensation to the claimants. In view of this decision it is unnecessary to pass upon the question as to the amount of compensation, and whether or not contribution to the support of the claimants by the deceased was shown.

*Judgment reversed. Stephens, P. J., concurs. Sutton, J., concurs specially.*