38067.   CURTIS *v.* ROYAL INDEMNITY COMPANY *et al.*

DECIDED JANUARY 29, 1960.

*Grace W. Thomas*, for plaintiff in error.

*Greene, Neely, Buckley & DeRieux, Burt DeRieux, James Moore*, contra.

NICHOLS, Judge. The deceased worked for the employer and his employment required him to make deliveries of merchandise sold by the employer in a truck owned by the employer and, on the date of the collision which caused his death he made two deliveries after hours to East Point, Georgia. The business was located in Atlanta. The last delivery was made at approximately 7 p.m., and the collision did not occur until approximately 11 p.m. The deceased employee also held a part time job cleaning two photographic studios in Atlanta after he finished his work for the employer here, and although the record is silent as to whether he, the deceased, did this cleaning work on the night in question, the deputy director assumed that he did and was en route from the photographic studios to his home when the collision occurred, and held that he was on a personal mission at the time of the collision after having held that, although the employer testified that it was a part of the duties of the deceased to carry the truck home at night, since he had transportation to and

from work and could use the truck for personal missions, that this arrangement was for the mutual benefit of the deceased employee and the employer.

Both the claimant's attorney and the attorney for the employer and insurer seem to argue that the basis of the holding was that the deceased employee was on a personal mission because after making the last delivery he had departed from his employment by going to the photographic studios before going home.

A careful reading of the deputy director's award shows that, while she held that the deceased was on a personal mission while en route to the photographic studios, the real holding in the case is that, as shown above, "I find further that while the employer stated it was part of Curtis' duties to carry the truck home at night, it would seem this arrangement was one of mutual benefit, since Curtis had transportation to and from work, and the use of the truck for his personal missions. That there is no evidence Curtis worked on a call basis, whereby he was actually on duty at all times. That even had he worked on an around-the-clock basis, he would not have been available to the employer until he reached his home where he could be contacted. I find, therefore, deceased was on a mission personal to himself when he received the injury resulting in his death, and that the accident did not arise out of and in the course of his employment, and compensation must be denied." Therefore, the real question for decision is, after the deceased employee left the photographic studios, was the act of driving the truck to his home in the course of his employment.

In *American Mutual Liability Ins. Co.* v. *Curry*, 187 *Ga.* 342, 353 (200 S. E. 150), the Supreme Court first quoted from Venho v. Ostrander Railway & Timber Co., 185 Wash. 138, 139 (52 P. 2d 1267), the rule that where an employee is injured while going to or from his work he is not in the course of his employment, and then quoted from the same case, with approval, the exception which is as well established as the rule itself: "The exception, which is supported by overwhelming authority, is this: When a workman is so injured while being transported in a vehicle furnished by his employer as an incident of the employment, he is

within 'the course of his employment,' as contemplated by the act. In other words, when the vehicle is supplied by the employer for the mutual benefit of himself and the workman to facilitate the progress of the work, the employment begins when the workman enters the vehicle and ends when he leaves it on the termination of his labor." The testimony of the employer in the present case was that there was no place on the premises to store the truck driven by the deceased and that it was a part of the duties of the deceased to store the truck at his home, and, under the finding of the deputy director that the driving of the truck to and from his home was for the mutual benefit of the employer and the employee, the deceased employee would normally have been in the course of his employment while en route from his last delivery to his home. Accordingly, the holding of the deputy director and of the full board that an injury which occurred under such circumstances was not compensable was contrary to law.

Admittedly the trip to the photographic studios was a departure from the employer's business and under the numerous decisions of this court and the Supreme Court the deceased employee would not have been in the course of his employment with Herndon Thomas Electronics while he was en route to, or at, the photographic studios, and there is no contention that he was in the course of his employment at such times. However, the real question is, was the deceased employee in the course of his employment while en route from the photographic studio to his home.

As has been shown above, the taking of the truck to his home was a part of the employment of the deceased and had he been injured while en route from the last place where he had made a delivery to his home the injury would, without question, have arisen out of and in the course of his employment.

The employer and insurer rely on cases such as *United States Fidelity &c. Co.* v. *Skinner*, 188 *Ga.* 823 (5 S. E. 2d 9), and *Fulton Bag & Cotton Mills* v. *Eudaly*, 95 *Ga. App.* 644 (98 S. E. 2d 235), to support their contention that the deceased employee had departed from his employment when he began his trip to the photographic studios and was therefore not in the scope of his employment at the time of the collision. In *United States Fidelity*

*&c. Co.* v. *Skinner,* the employee died as the result of injuries received when en route from Savannah to Tybee Beach on a personal mission, and was in much the same position as the deceased employee here would have been had the collision occurred while he was en route to the photographic studios. In *Fulton Bag & Cotton Mills* v. *Eudaly,* the employee was involved in a collision after he departed from his employment on a personal mission and while he was en route back to the place of departure. He had not, at the time of the collision, once more undertaken his duties as an employee but was en route back to his employment. Neither of these cases is applicable to the facts here, nor is the case of *Reddy-Waldhauer-Maffett Co.* v. *Spivey,* 53 *Ga. App.* 117 (185 S. E. 147), where, after the automobile was parked for the night, the employee used it for his own benefit and caused injuries to a third person.

In *Atlanta Furniture Co.* v. *Walker,* 51 *Ga. App.* 781 (1) (181 S. E. 498), it was said: "Although a servant may have made a temporary departure from the service of his master, and in so doing may for the time have severed the relationship of master and servant, yet where the object of the servant's departure has been accomplished and he has resumed the discharge of his duties to the master, the responsibility of the master for the acts of the servant reattaches. Where a servant whose duty in the employment of the master is to drive a truck and to make delivery of an article of merchandise at a designated place, and then return with the truck to the garage where it is to be placed for the night, and where the servant, after having proceeded to the place for delivery of the merchandise, instead of proceeding to return the truck to the garage, makes a temporary departure from the service of the master by proceeding with the truck on a devious course from that necessary to return it to the garage and goes to his own home on a mission of his own, and where, after attending to this mission, he proceeds, about 9 o'clock at night, to return the truck to the garage as his duties to the master require him, the servant has then resumed his duties to the master, and in the operation of the truck for the purpose of returning it to the garage he is acting within the scope of his authority and is in the discharge of his duty to the master."

Under the above decisions the deceased was injured while in the course of his employment and the injury arose out of his employment, and there is no contention made that the injuries did not cause his death. The superior court erred in affirming the award of the full board which award denied the widow and minor children of the deceased employee compensation. It is therefore ordered that the judgment of the Superior Court of Fulton County be reversed with direction that such court enter judgment directing the State Board of Workmen's Compensation to enter an award of compensation and "medical" based on the record.

*Judgment reversed with direction. Felton, C. J., and Quillian, J., concur.*