42212. TRAVELERS INSURANCE COMPANY et al. v. MOORE.

ARGUED SEPTEMBER 8, 1966—DECIDED FEBRUARY 9, 1967— REHEARING DENIED FEBRUARY 27, 1967—

*Robinson, Thompson, Buice & Harben, B. Carl Buice,* for appellants.

*Robert E. Andrews,* for appellee.

PANNELL, Judge. Claimant is the widow of C. D. Moore, an employee of Clipper Petroleum Co., Inc., who was killed in an automobile accident. Mr. Moore's duties consisted in part in auditing of sales of consigned merchandise made by his employer's customers, in collecting from such customers amounts due his employer, and bringing it to employer's office. When employee used his automobile in visiting customers' stations, the employer paid for gasoline.

Mr. Moore's home was in Clermont and his employer's office was in Gainesville. On the day before his death, Mr. Moore, accompanied by Mr. Hudgins, manager of Clipper Petroleum

Company, Inc., was in the process of checking a shortage at a service station located on the highway between Clermont and Gainesville. He carried this money home with him for the night, a custom known and permitted by the employer, worked on his report that night, and the morning of his death started toward Gainesville. The evidence is conflicting as to whether he intended to stop by the station to collect additional money or go to the employer's office and then to the station. In any event, he was killed in an automobile accident between his home and station some fifteen minutes before 7 a.m., the time he was usually due at the office. The money he was carrying was taken from his car by other employees of his employer and conveyed to the office.

The deputy director found against liability. The full board of the State Board of Workmen's Compensation reversed this finding and found that the deceased was within the scope of his employment at the time he met his death, and awarded compensation to his widow and children. The superior court on appeal affirmed the finding of the board and the present appeal is from the order of the superior court.

The duties of the employee in this case required him to go to various places of business of customers of his employer, auditing sales there made of consigned merchandise belonging to the employer, and in collecting from such customers the amounts due the employer and bringing the sums collected to the employer's office. The bringing of the money to his employer's office was not merely incidental to the employment but necessarily a *specific duty* thereof. Even though, for the sake of argument, we concede that going home before bringing the money to the office of the employer might have been a deviation, yet when he left his home with the money traveling in the direction of the office of the employer this was sufficient to authorize a finding that he was taking the money to the employer's office; and he was taking it not because of a duty imposed by law, and not because it was incidental to his employment, but because it was the performance of the specific duties of his employment at a location where he usually performed such duty, that is, on the way to the employer's office. The duty

of transporting the money necessarily occurred on the way to the employer's office. In our opinion, the accident arose out of and in the course of the employment of the deceased and the dependents were entitled to compensation on account of his death resulting therefrom. See *Bituminous Cas. Corp. v. Humphries*, 91 Ga. App. 271, 275 (85 SE2d 456) holding that "when an employee is permitted or required by his master to perform a part of the work contemplated by the contract of employment, or some act incidental thereto and beneficial to the employer, while en route to work, and is accidentally injured, the injury arises in the course of his employment."

In this connection the insurance carrier relies upon a Kansas case (Repstine v. Hudson Oil Co., 155 Kan. 486 (126 P2d 225)) in which it appeared that an employee, who was employed to operate a filling station and who was responsible for the money taken in at the station, customarily took the money home with him and took it back to the station the next day. He was injured while driving his car to work at the station and while carrying the proceeds of the previous day's business. There was no means provided by the employer other than for the employee to take it home with him, and it was his duty to protect the money at all times. In that case, after reviewing the Kansas authorities, the Kansas court said: "When we review the above rules in the light of the circumstances of the case we are considering *we are impelled to the conclusion that there was no causative connection between the fact that the deceased in this case had the money of his employer on his person when he was killed and his injury or accident would have occurred just the same had the money not been in his possession.* The accident cannot be held to have arisen 'out of' the employment. It should be observed that there are early decisions of this court which might seem to hold an accident such as we have here to be compensable. We prefer the rule, however, as it has been stated in the authorities cited here." (Emphasis supplied). The reason given for the decision in the Kansas case would not apply in Georgia. In Georgia the accident is compensable if the employment contributes to the injury rather than causes it. See *Western & A. R. v. Mathis*, 63 Ga. App. 172, 174 (10 SE2d 457);

*Fidelity & Cas. Co. v. Adams,* 70 Ga. App. 297, 298 (28 SE2d 79) ; *Davis v. American Mut. Liab. Ins. Co.,* 72 Ga. App. 783, 788 (35 SE2d 203). It appears, too, that the carrying of the money home and bringing it back in the Kansas case might have been incidental to the employment rather than a part of it, as the claimant in that case was employed to operate a filling station at a definite location; whereas, in the present case, the employee's place of employment was outside of a fixed location and one of the express and specific duties of his employment was collecting money at various locations and transporting this money to the office of the employer. We do not see how this latter act, the transportation of the money, could be said to be merely incidental to the employment rather than an integral part thereof.

*Judgment affirmed. Bell, P. J., Hall and Jordan, JJ., concur. Deen and Quillian, JJ., concur specially. Felton, C. J., Frankum, P. J., and Eberhardt, J., dissent.*

QUILLIAN, Judge, concurring specially. There was evidence that when he was killed the employee was en route to a service station where he was to make a collection for his employer. For this reason, the award of the Workmen's Compensation Board based on the finding that the employee's death arose out of and in the course of his employment was authorized.

I am authorized to state that Judge Deen concurs in this special concurrence.

FRANKUM, Presiding Judge, dissenting. I think that the evidence in this case demanded a finding that the employee at the time he was killed was not in the course of his employment with the employer, and that the State Board of Workmen's Compensation erred in entering an award granting compensation to the employee's dependents on account of his death. As is indicated by the majority opinion, the evidence is silent as to the employee's intent on the morning that he was killed, but I do not think that whether he intended to stop at the service station which he had been auditing the day before or to proceed past that service station to his employer's place of business makes one particle of difference. The following facts are undisputed: A part of the employee's duties consisted of the auditing of sales

of consigned merchandise made by his employer's customers, collecting from such customers amounts due his employer, and preparing reports showing such collections. The employee used his own automobile in traveling to the various service stations which he was required to audit. For such travel the employer furnished the gasoline which he used. The employee, solely for his own convenience at the end of the day preceding his accidental death, took collections consisting of cash, checks, gasoline charge cards, etc., to his home where he prepared his report in the evening. On the following morning, while driving his automobile to work and while having in his possession the aforesaid collections and report, he ran off the road and was killed, approximately 15 minutes before his regular time to begin work, and at a point approximately one-half mile before reaching the service station which he had been checking the previous day, which was on the direct route from his home to his employer's place of business.

Under these circumstances, I do not think his injury and death were compensable. To my mind the facts in the cases of Sylvan v. Sylvan Bros., 225 S. C. 429 (82 SE2d 794), and Repstine v. Hudson Oil Co., 155 Kan. 486 (126 P2d 225), are substantially like the facts in this case, and the ruling by the Supreme Court of South Carolina and the ruling by the Supreme Court of Kansas in those cases enunciated sound principles of law applicable to this case. At the time of his injury and death the employee's workday had not begun, and he had not reached the point at which he was to begin his day's work for his employer, and this was so whether he may have intended to begin his workday by stopping at the aforesaid service station for the purpose of making a further collection from the operator thereof, or had intended to continue on to his employer's place of business and later return to the station. The fact that the employee had in his possession money belonging to his employer and his report of his collections, which it was his *duty* to deliver to his employer, does not alter this result, because the evidence shows that while he was permitted to carry his collections home at the end of the day, it was his employer's preference that this not be done and that he bring his collections· in to the office at

the close of each day's work. I do not think that the mere acquiescence by the employer in the employee's practice of taking his collections home at night and bringing them in the next morning, where the employer had expressly instructed the employee not to do this, changes the general rule that an employee merely on his way to work and before arriving at the place where he is to perform the duties of his employment is not in the course of his employment within the meaning of the Workmen's Compensation Act.

The conclusion which I reach is supported by prior rulings of this court and of the Supreme Court of this state interpreting and applying our Workmen's Compensation Law. In order for an injury to be compensable under the Workmen's Compensation Act it must result from an accident arising out of and occurring in the course of the employment. *Code* § 114-102. An accident occurs in the course of employment within the meaning of the Act when it occurs within the period of the employment and while the employee is at a place where he reasonably may be in the performance of his duties. *Employers Liability Assur. Corp. v. Woodward,* 53 Ga. App. 778 (187 SE 142). Where the question presented relates to whether an accidental injury occurring while the employee was en route to work is compensable, it generally has been held that such an injury is not one occurring in the course of employment in the absence of a showing that the employer furnished transportation to and from work as a part of the employment contract. *Georgia R. &c. Co. v. Clore,* 34 Ga. App. 409 (129 SE 799); *Wilcox v. Shepherd Lumber Corp.,* 80 Ga. App. 71 (2) (55 SE2d 382); *Bituminous Cas. Corp. v. Humphries,* 91 Ga. App. 271, 275 (85 SE2d 456); *Travelers Ins. Co. v. Ross,* 110 Ga. App. 312 (138 SE2d 474); *American Mut. Liab. Ins. Co. v. Curry,* 187 Ga. 342 (200 SE 150). The majority opinion completely disregards these authorities which to my mind are controlling.

For these reasons I think that the judge of the superior court erred in entering a judgment affirming the award of compensation.

I am authorized to state that Chief Judge Felton and Judge Eberhardt concur in this dissent.