46529. ADAMS v. U. S.. FIDELITY &
GUARANTY COMPANY et al.
46538. CALDWELL v. U. S. FIDELITY &
GUARANTY COMPANY et al.
46539. DIAMOND v. U. S. FIDELITY &
GUARANTY COMPANY et al.
46540. JENKINS v. U. S. FIDELITY &
GUARANTY COMPANY et al..
46541. SMITH v. U. S. FIDELITY &
GUARANTY COMPANY et al.

EVANS, Judge.. These are workmen's compensation cases, in which the Workmen's Compensation Board decided · for the claimants, which award was reversed by the superior court and claimants (appellants) then appealed to this court for review. There was evidence in the record from which the Workmen's Compensation Board was authorized to find the following facts to have been proven:

Wright & Lopez, Inc., employed certain persons, who resided in Floyd County, to perform work for it in Cobb County, and as a part of the contract of employment an arrangement was made that whichever one of the employees used his automobile in transporting his fellow employees to and from work would be reimbursed in the amount of $3 per day, or $15 per week. The employer also guaranteed payment of seven gallons of gas per day for such transportation. This arrangement was followed for some time prior to and including the day on which the wreck occurred which gives rise to these cases.

On the day in question, at the end of the day's work, the employees did not proceed toward Floyd County immediately, but, first went into Fulton County where they

bought wine and liquors and then began their homeward journey. There was evidence from which it could be inferred that several of them were drinking whiskey, including the driver, and that said driver turned the car over to one of his fellow employees, who was sober, in order that the sober employee could drive the car. The automobile proceeded on the most direct, or best, route from the liquor store in Fulton County to their home in Floyd County, making one or two stops along the way. Wine and whiskey were bought at these stops. The new driver, however, remained sober, and was driving the automobile on that part of the route that they traveled each day, and while on said route, they were involved in a collision in which two of them were killed and three of them were seriously injured.

The claims in these five cases were filed by the three injured claimants, and by the mother of one deceased employee and the guardian of the minor children of the other deceased employee.

The appellee (the insurer of the employer) insists that the superior court properly overturned the award of the Workmen's Compensation Board, and his contentions in this respect are: (a) There was a deviation from the scope of employment, and the trip from the place of employment into Fulton County was such a stepping aside from the terms of employment, including the agreement as to transportation, as precludes an award for the claimants. (b) The employees were voluntarily drunk at the time of the collision and injuries, including the driver, and this conduct precludes an award for the claimants. (c) The driver of the car in which claimants were riding was exceeding the speed limit at the time of the collision, and their death and injuries resulted from the unlawful conduct of one they had voluntarily placed in charge of the car as driver and thus precludes an award for claimants. *Held:*

1. In a workmen's compensation case, the award of the board has the same effect as the verdict of a jury, and it

must be upheld if there is "any evidence" to support it. Even if the appellee is correct in his contention that the evidence strongly preponderated toward his theory of the facts in the case, this is not enough to overturn an award by the board. The superior court and this court are both bound by the finding of the Board of Workmen's Compensation if there is any competent evidence to support the award. See *Delta C & S Airlines v. Perry*, 94 Ga. App. 107 (93 SE2d 771); *Maryland Cas. Co. v. Sanders*, 182 Ga. 594 (186 SE 693); *Ocean Accident &c Corp. v. Farr*, 180 Ga. 266, 270 (178 SE 728); *South v. Indemnity Ins. Co. of N. A.*, 41 Ga. App. 827 (155 SE 48); *Taylor v. Lumbermen's Mut. Cas. Co.*, 43 Ga. App. 292 (158 SE 623); *Hartford Accident &c. Co. v. Ledford*, 116 Ga. App. 402 (157 SE2d 318); *Ga. Pacific Corp. v. Buchanan*, 113 Ga. App. 844 (149 SE2d 831); *J. D. Jewell, Inc. v. Ward*, 119 Ga. App. 113 (166 SE2d 403); *Fulmer v. Aetna Cas &c. Co.*, 85 Ga. App. 102 (68 SE2d 180).

2. On the question of deviation or stepping aside from scope of employment, by going into Fulton County, this argument might have considerable force if the collision had occurred while going to the whiskey store. But these employees had left the whiskey store and were headed for home on the most direct route; and had actually reached the same route they used every day on their trips to and from work, when the collision occurred. We hold that the employees were in the scope of employment at the time the collision occurred. *Davies v. Hearn*, 45 Ga. App. 276 (164 SE 273); *Atlanta Furniture Co. v. Walker*, 51 Ga. App. 781 (181 SE 498); *Wicker v. Fidel. & Cas. Co.*, 59 Ga. App. 521 (1 SE2d 464); *Curtis v. Royal Indem. Co.*, 101 Ga. App. 158 (112 SE2d 819).

3. On the question of intoxication of the driver of the vehicle, the driver himself, Willie C. Jenkins, testified as follows in this respect: "Q. How much whiskey did you drink there?" (Kingston—shortly before the wreck). "A. I didn't drink any." He also testified that he did not have anything to drink at any time on the trip except a Pepsi-

Cola in Kingston shortly before the wreck. This was direct evidence, therefore, that he was not drinking, but was cold sober, although we readily concede there was other testimony from which it could be inferred that he had taken a drink. The above testimony was sufficient upon which to make a finding that the driver was not intoxicated. As to the testimony of intoxication of those who were riding with him, this is not enough to preclude a recovery.

It has been held that one who enters a car driven by an intoxicated driver, may still recover if the circumstances were such as to suggest the driver, despite intoxication, was able to drive with proper skill and diligence. *Sparks v. Porcher,* 109 Ga. App. 334 (136 SE2d 153). Conversely, of course, if the driver is so obviously drunk as to be incapacitated to drive, one electing to become a passenger with such knowledge could not recover where the collision is caused by the driver's intoxication. But where the driver is sober, there is no duty upon the passenger to remain awake in order to become a backseat driver, and to warn the driver against hazards. The passenger has the right to assume the driver will obey the law and drive properly; and no duty of any kind devolves upon the passenger to take steps for his own protection until he has knowledge of the danger. *Browning v. Kahle,* 106 Ga. App. 353, 358 (126 SE2d 892). It is true that the passenger cannot "close his eyes to known and obvious danger," but that does not mean that he must keep a watch ahead, so if the driver makes a mistake, he may correct the driver. Such conduct on the passenger's part would be as likely to cause injury as to prevent it because only one person can drive a car at a time. There is an ancient proverb that "Too many cooks spoil the broth." In the instant case, where the evidence is sufficient to show that the driver was cold sober and capable of driving the car, the passengers did not preclude themselves from recovering by drinking whiskey while en route to their destination. And this is especially true in

the case sub judice because the evidence is sufficient to show that their consumption of alcoholic beverages had no causal relationship whatever with the collision.

4. On the question of speed of the car at the time of the collision, the driver, Willie C. Jenkins, testified that the car was running "about 60 or 65" immediately before the collision. Surely this could not be equated with wilful and wanton conduct, which is essential before denial of a recovery because of speed violation. *Carroll v. Aetna Life Ins. Co.*, 39 Ga. App. 78, 82 (146 SE 788); *Standard Accident Ins. Co. v. Pardue*, 39 Ga. App. 87 (2) (146 SE 638).

5. In the case before us the basic issues of liability, dependency, compensation, medical and burial expenses were properly considered by the deputy director and later by the board, and the lower court was without power, authority or jurisdiction to set aside the awards.

*Judgments reversed. Bell, C. J., Pannell, Deen and Quillian, JJ., concur. Hall, P. J., concurs specially. Jordan, P. J., and Eberhardt, J., dissent. Whitman, J., not participating.*

ARGUED SEPTEMBER 15, 1971—DECIDED NOVEMBER 15, 1971—REHEARING DENIED DECEMBER 17, 1971.

*E. J. Clower, Rogers, Magruder & Hoyt, J. Clinton Sumner, Jr.,* for appellants.

*Richard W. Best,* for appellees.

HALL, Presiding Judge, concurring specially. Under the "any evidence rule," it is my opinion that the board was authorized to find that the claimants were within the scope of their employment at the time of the injuries and that the employer failed to carry the burden to show that the proximate cause of the accident was due to violations of penal statutes. *Smith v. Liberty Mut. Ins. Co.*, 111 Ga. App. 616 (142 SE2d 459); *Travelers Ins. Co. v. Moore*, 115 Ga. App. 295 (154 SE2d 385); *Ferguson v. City of Macon*, 121 Ga. App. 128 (173 SE2d 227); *Young v. American Ins. Co.*, 110 Ga. App. 269 (138 SE2d 385); *Gooseby v. Pinson*

*Tire Co.,* 65 Ga. App. 837 (16 SE2d 767).

JORDAN, Presiding Judge, dissenting. 1. In my opinion the facts show such a major deviation from the normal procedure of driving from the place of employment to the home of the claimants as to demand a finding that the claimants were not within the scope of their employment at the time of the injuries. The facts show that the employees left their place of employment at or near 5 p.m. on a Friday before Labor Day; that the trip home, Marietta to Rome, normally took approximately one hour; that they did not proceed home but drove some 15 miles in another direction to a whiskey store where they purchased a supply of whiskey and wine; then returned on a course toward Rome and made at least two stops for food and drinks before the accident happened. The time of the accident is placed at sometime between 8 and 9 p.m., some three or more hours after leaving the place of employment. It is well settled in Georgia as elsewhere that minor deviations will not remove an employee from the scope of his employment. Also, that after a temporary departure the employee can re-enter the scope of his employment and responsibility reattaches. *Atlanta Furniture Co. v. Walker,* 51 Ga. App. 781 (1) (181 SE 498). But the facts here demand a finding that the deviation was substantial and to a degree in time so that a mere return to the correct route would not in and of itself return the employees to the scope of employment. Increasing the travel time from place of employment to home from approximately one hour to approximately three hours necessarily increased the hazards due to such factors as daylight or darkness, traffic and weather conditions. See 1 Larson, § 19.61. An employee does not have the right to unreasonably delay his trip homeward in order to extend the time of his employment to cover a hazard which would never have reasonably occurred had he proceeded within a reasonable period of time. Dooley v. Smith's Transfer Co., 26 N. J. Misc. 129 (57 A2d 554) (1948). It is my opinion that the evidence here demands a finding that the entire venture, based on personal detours and the time element, takes it

out of the scope of the claimant's employment.

2. The evidence further demanded a finding that the accident occurred through the wilful misconduct of some or all of the claimants. The driver Jenkins testified that he was sober. It is evident from the facts that the others were in varying degrees of drunkenness. The driver testifies that he was familiar with this road and of the curve where the accident happened he said, "I say this one here is the dangerous curve traveling . . . going back. Rest of the curves is not as bad as this one here." In spite of this knowledge and in view of the maximum speed limit of 60 m.p.h. and the law requiring a driver to slow his speed when approaching a curve, he testified that his speed at this curve was "60 or 65, something like that." When asked if he was going too fast to make the curve, he said, "Well, it was a little too fast."

It is also clear that the wilful drunken condition of at least one of the claimants, Billy Smith, contributed to the accident. The driver testifies that there were 3 on the front seat including the driver and that "the boy sitting next to me went to sleep with his foot on mine. I couldn't get him off mine." This apparently accounts for the investigating officer's testimony that there were no brake or skid marks at the scene of the accident. *Code Ann.* § 114-105 provides, "No compensation shall be allowed for an injury or death due to the employee's wilful misconduct, including intentionally self-inflicted injury, or growing out of his attempt to injure another, or due to intoxication or wilful failure or refusal to use a safety appliance or perform a duty required by statute. . ."

Under all the facts of this case the trial court did not err in reversing the board's order awarding compensation to the claimants. I would affirm.

I am authorized to state that Judge Eberhardt concurs in this dissent.